# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| KIN-YIP CHUN, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:18-cv-01338-X |
| | § | CLASS ACTION |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| FLUOR CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**SUPPLEMENT TO FIRST AMENDED CONSOLIDATED COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS**

Pursuant to Federal Rule of Civil Procedure 15(d), Lead Plaintiffs Wayne County Employees' Retirement System, the Town of Fairfield Employees' Retirement Plan, and the Town of Fairfield Police and Firemen's Retirement Plan (collectively, "Plaintiffs") hereby supplement their First Amended Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint") (ECF No. 90) as follows.

## I.    FLUOR'S RESTATEMENT FURTHER ESTABLISHES FALSITY AND SCIENTER

1.     On September 25, 2020, Fluor issued its 2019 annual report on Form 10-K, which restated its financial statements for the three years ended December 31, 2016, 2017, and 2018, and each quarterly financial statement for 2018 and 2019 (the "Restatement") and made numerous damning admissions that establish ***both*** falsity and scienter regarding the fraud Plaintiffs allege in the Complaint.  ***First***, the Restatement provides that, contrary to its Class Period assurances, Fluor "pursued and [was] awarded a larger percentage of high-risk lump-sum contracts which resulted in the company assuming a higher risk profile."  ***Second***, in contrast to its Class Period statements regarding the purported effectiveness of Fluor's disclosure controls, the Restatement confirms that Fluor's "disclosure controls and procedures were not effective . . . due to the existence of the material weaknesses in our ICFR."[1]  ***Third***, the Restatement confirms that Fluor's Class Period statements regarding its revenue recognition practices were false in light of material weaknesses that "resulted in incorrect recognition of revenue and projected losses."  ***Finally***, the Restatement establishes that Fluor's financial statements were "materially incorrect" when issued and "should no longer be relied upon" due to accounting errors that led to "overstate[d] revenue" and "understate[d] cost[s]" on fixed-price projects between 2016 and September 30, 2019.  These findings resulted from an internal investigation led by a "Special Committee" of more than 100 "legal and accounting

---

[1]    "ICFR" refers to "internal controls over financial reporting."

advisors." They also buttress the Complaint's allegation (¶172(f))[2] that those financial statements contained misstatements and omissions that, *inter alia*, violated Regulation S-K, Item 303.

2.      From an accounting and SEC reporting perspective, a restatement of previously issued financial statements is an admission that a public registrant's prior financial statements were materially false and misleading when issued based on the facts that existed at the time the financial statements were originally issued.   Specifically, Generally Accepted Accounting Principles ("GAAP") and the Financial Accounting Standards Board's ("FASB") Accounting Standards Codification ("ASC") define an "error in previously issued financial statements" as follows:

> An error in recognition, measurement, presentation, or disclosure in financial statements resulting from mathematical mistakes, mistakes in the application of generally accepted accounting principles (GAAP), or oversight or misuse of facts **that existed at the time the financial statements were prepared**.[3]

ASC 250-10-45-23 requires that such accounting errors are to be corrected through a "restatement":

> Any error in the financial statements of a prior period discovered after the financial statements are available to be issued . . . shall be reported as an error correction, by restating the prior-period financial statements . . . .   Financial statements for each individual prior period presented shall be adjusted to reflect correction of the period-specific effects of the error.

3.      The requirement to restate errors in previously issued financial statements applies only to **material errors**.   Specifically, ASC 250-10-S99-2 provides that "[c]orrecting prior year financial statements for immaterial errors would not require previously filed reports to be amended."

4.      Therefore, in accordance with GAAP, the Restatement reflects Fluor's  conclusion and acknowledgement that: (1) GAAP accounting errors existed in Fluor's previously issued financial statements; (2) the accounting errors were material; and (3) the accounting errors  resulted

---

2       All standalone paragraph references ("¶_" and "¶¶__") are to the Complaint.

3       *See* ASC 250-10-20.

from the oversight or misuse of facts that existed at the time the previously issued financial statements were originally presented.[4]

### A. The Restatement Further Establishes the Falsity of Certain Class Period Misrepresentations and Omissions

#### 1. Fluor's Purportedly Conservative Bidding Process and Risk Management

5.      **Statement Nos. 1-19**.  Throughout the Class Period, in an effort to assuage the market's concern over Fluor's growing portfolio of fixed-price contracts, Defendants falsely assured investors that they had "not seen [Fluor's] risk profile increase" and that they were "very comfortable with [the] risk profile" associated with the Company's fixed-price contract awards. ¶¶90, 95.  According to Defendants, their "highly selective" and "very conservative" approach to bidding fixed-price contracts allowed the Company, unlike its competitors, to simply "say no" to those fixed-price projects that were high-risk or would not earn the profitability the Company desired.  *See* ¶¶87-90, 92-97, 99-105, 108-109, 111.

6.      As disclosed in the Restatement, however, the Special Committee concluded "that in executing a growth strategy," the former senior management team (*i.e.*, Defendants) "pursued and . . . were awarded a larger percentage of high-risk lump-sum contracts which ***resulted in the company assuming a higher risk profile***."  The Special Committee also concluded that Fluor "***did not adequately enhance its operational risk framework to effectively manage the type, increased volume and higher proportion of these lump-sum contracts***," and that in certain instances the

---

[4]      Although "mathematical mistakes" and "mistakes in the application of" GAAP are also grounds for a restatement, Fluor did not indicate that its Restatement was the result of such mistakes.  Rather, the Restatement was the result of a wide-ranging Special Committee review that uncovered that Fluor's "former senior management team" pursued high-risk contracts and provided estimates that were "too optimistic."  The Restatement also confirms that "prior business line management applied inappropriate pressure to project personnel."

Company had submitted bids that were "designed to enhance the probability of winning the contracts in a competitive market" and "were at times *too optimistic*."

## 2. Fluor's Disclosure Controls and Procedures

7.      As a public registrant, Fluor was subject to the provisions of the Sarbanes-Oxley Act of 2002 ("SOX").  SOX §§302 and 404 required Defendants to assess Fluor's internal controls over financial reporting and disclose whether or not such controls were effective to prevent or detect a material GAAP misstatement in Fluor's financial statements.  The SEC has stated that its rule implementing SOX and requiring these internal controls over financial reporting certifications was "intended to bring information about material weaknesses in [internal controls over financial reporting] into public view."[5]  "A material weakness is a deficiency, or a combination of deficiencies, in internal controls over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis."[6]  As described herein, the Restatement establishes that Fluor's annual and interim financial statements included numerous material misstatements, including recurrent overstating of segment and total revenues and profit and understating of costs and net loss.

8.      **Statement Nos. 37-39**.  In each of Fluor's previously issued annual reports for the three years ended December 31, 2016, 2017, and 2018 and quarterly reports for 2018 and 2019, Defendants represented that management had evaluated the Company's internal controls over

---

[5]      *See* SEC Release No. 33-8810, §II.B.3., at 38 (June 27, 2007).

[6]      *See* PCAOB Auditing Standard ("AS") No. 5, ¶A7.  An ICFR deficiency exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent or detect misstatements on a timely basis.  As set forth under PCAOB AS No. 5, ¶A3, a design deficiency "exists when (a) a control necessary to meet the control objective is missing or (b) an existing control is not properly designed so that, even if the control operates as designed, the control objective would not be met."  An operating deficiency "exists when a properly designed control does not operate as designed, or when the person performing the control does not possess the necessary authority or competence to perform the control effectively."  *Id.*

- 4 -

financial reporting and "concluded that the company's internal control over financial reporting was effective."   ¶¶141-142.   Each annual and quarterly report also contained certifications from Defendants that: (a) the report "fairly present[ed] in all material respects the financial condition [and] results of operations" of the Company; (b) the report "d[id] not contain any untrue statement of a material fact"; and (c) the Company had disclosed "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting."   ¶143.

9.     The Restatement confirms that these statements were false because, despite prior assurances to the contrary, Fluor's internal controls over financial reporting were ineffective due to the existence of multiple, admitted material weaknesses during the period 2016 through Q4 2019.

10.     As confirmed by the Restatement, "[a] material weakness is a deficiency, or combination of deficiencies, in internal controls over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis."   It disclosed that, during the Class Period, Fluor suffered from "material weaknesses in controls related to the Company's failure to timely identify the out-of-period effects of adjustments related to project cost forecasts and the estimation of the amount of variable consideration, as well as controls over the project cost forecasting process and non-compliance with the Company's established policies and procedures." Specifically, the Restatement identified the following material weaknesses, which rendered the Company's internal controls ineffective and its Class Period statements regarding the purported effectiveness of its internal controls misleading:

- As of December 31, 2019, we determined there was a ***material weakness*** in FFS due to a failure to timely identify the out-of-period effects of adjustments related to the forecast, as well as adjustments related to the estimation of the amount of variable consideration, for the Radford project. These failures resulted in ***incorrect recognition of revenue and projected losses*** on the project in 2019 and prior.  In periods prior to 2019, FFS also did not maintain effective controls over ***project cost forecasting***, primarily driven

- 5 -

by a failure to maintain a sufficient complement of project level personnel with appropriate levels of accounting and controls knowledge for the Radford project.

- Former leaders of our Energy & Chemicals segment caused pressure to **be applied on the individuals charged with accounting and finance responsibilities in a manner intended to present overly optimistic forecasts** across certain Energy & Chemicals projects. This resulted in a **material weakness** in the Energy & Chemicals segment associated with its non-compliance with Fluor's policies and procedures designed to promote a commitment to ethical practices. Although the pressure did not result in inaccurate forecasts in all instances in which it was applied, in certain instances the pressure gave rise to an override of our project controls on a project and resulted in errors in our financial statements due to unsupported forecasted estimates.

11.    **Statement Nos. 45, 49, 52, 54, 56-57, 60-61, and 63**. From November 2016 to May 2019, as Defendants continued to take charges and make forecast revisions on the fixed-price projects, they repeatedly and falsely assured the market that they had actually **enhanced** the Company's internal controls and "**significantly increased the independent review of critical projects**" so as to prevent additional charges in the future. ¶153; *see also* ¶¶149, 156, 162, 163, 166-167, 170. When disclosing charges related to fixed-price gas-fired plants in the Power segment, Defendants falsely assured the market that such problems stemmed from "a confined problem within a group" – *i.e.*, the Power segment. ¶159.

12.    As discussed above, however, the Restatement reveals that Fluor did not maintain effective controls or enhance its project review process "in 2019" and "[i]n periods prior to 2019" which "resulted in incorrect recognition of revenue and projected losses" during 2016 to 2019. Moreover, the Restatement confirms "that the company did **not** adequately enhance its operational risk framework to effectively manage the type, increased volume and higher proportion of these lump-sum contracts." Furthermore, as described herein, the Restatement makes clear that Fluor's project problems were not confined to the gas-fired plants in the Power segment. Rather, the same

bidding, execution, and accounting problems plagued fixed-price projects in ***all*** of the Company's segments.

### 3.   Fluor's Practices Related to Revenue Recognition and Projected Losses

13.   As described in ¶¶36-43, GAAP required Defendants to identify, estimate, and accumulate all contract costs with a high degree of precision before Fluor could recognize any revenue on each of its fixed-price contracts.  Under the "percentage-of-completion" method of revenue recognition applied by Fluor to its fixed-price contracts during the Class Period, Fluor was required to prepare accurate quarterly estimates of costs to complete each contract in progress.  ¶38. These quarter-end estimates of "costs-to-complete" dictated how much revenue Fluor was permitted to recognize on each of its fixed-price contracts.  ¶39.  GAAP required Fluor to maintain a sophisticated cost accounting system to accurately track the costs of each of Fluor's fixed-price projects.  ¶40 (citing ASC 605).  Additionally, GAAP required Fluor to accurately account for change orders and open claims before recognizing revenue on such orders and claims.  ¶43.  Only change orders/claims that are approved or whose approval is "probable" under GAAP may be recognized as revenue.  *Id.*  During the Class Period, Defendants falsely stated that their revenue recognition practices complied with these GAAP provisions such that change order/claim revenue was not overstated and costs were not understated.  The Restatement proves otherwise.

14.   **Statement No. 40**.  In connection with the filing of each Form 10-K and Form 10-Q issued during the Class Period, in recognizing revenue for that period, Defendants assured investors that all currently estimated fixed-price contract costs had been recognized and that only approved or probable change/order claims were included in revenue:

> The percentage-of-completion method of revenue recognition requires the company to prepare estimates of cost to complete for contracts in progress.  In making such estimates, judgments are required to evaluate contingencies such as potential variances in schedule and the cost of materials, labor cost and productivity, the impact of change orders, liability claims, contract disputes and achievement of

- 7 -

contractual performance standards.  Changes in total estimated contract cost and losses, if any, are recognized in the period they are determined.[7]

15.     In truth, the Restatement identifies material weaknesses "due to a failure to timely identify the out-of-period effects of adjustments related to the forecast, as well as adjustments related to the estimation of the amount of variable consideration."[8]  These failures, the Restatement provides, "resulted in **incorrect recognition of revenue and projected losses on the [Radford] project in 2019 and prior**."  Moreover, the Restatement explains that the Special Committee identified "material errors" that "arose from a **failure to timely recognize changes in forecasted project costs and from errors in estimating variable consideration in accounting** for the Radford project.  As a result, the errors associated with variable consideration caused [Fluor] to **overstate revenue** and the errors associated with forecasted costs caused us to **understate cost of revenue** between 2016 and September 30, 2019."

### 4.     Fluor's 2016-2019 Annual and Quarterly Financial Results

16.     **Statement No. 46**: On February 17, 2017, Fluor released its fiscal year 2016 Form 10-K, which reported total revenue of approximately $19 billion for fiscal year 2016.  ¶150.  The Company also reported that it had recorded $61 million in claim revenue as of the end of 2016.  *Id.* It credited growth in the Government and Power segments as driving revenues and profits.  *Id.*

---

[7]    This statement was repeated in every Form 10-K issued by Fluor during the Class Period in identical or substantially similar form.  *See* ¶144.

[8]    As described in the Restatement, anticipated revenues from change orders, claims, award fees, incentive fees, and liquidated damages are included in "variable consideration."  Fluor considers "variable consideration in the development of [its] project forecasts so that [its] forecasted revenue reflects the amount of consideration [it] expect[s] to be probable of recovering without a future significant reversal."

17.     In truth, as disclosed in the Restatement, total 2016 revenue was just $14.6 billion.[9] The Restatement also revealed that Fluor's 2016 Form 10-K overstated Government segment revenue by $13 million.  It also establishes that total segment profit was overstated by 12% – $663.3 million as restated versus $744.3 million as reported in the 2016 Form 10-K.  It establishes that the profit misstatement concerned the Government segment for which profit was overstated by ***1,975%*** as a result of the Radford project – in the 2016 Form 10-K, Fluor disclosed Government segment profit of $85.1 million, but as evidenced by the Restatement, Government segment profit for fiscal year 2016 was only $4.1 million.  Finally, the Restatement confirms that the "claim revenue" and total revenue recorded during this period was incorrect due to (i) "errors associated with variable consideration" that caused Fluor "to ***overstate revenue***" and (ii) "errors associated with forecasted costs" that caused Fluor "to ***understate cost of revenue*** between 2016 and September 30, 2019."

18.     The following table graphically depicts the falsity of Statement No. 46 in light of Fluor's admissions in the Restatement:

| Metric | As Reported | As Restated | Percentage Over/Understated |
|---|---|---|---|
| Government Revenue | $2,720 million | $2,707 million | 0.5% overstated |
| Total Segment Profit | $744.3 million | $663.3 million | 12% overstated |
| Government Profit | $85.1 million | $4.1 million | 1,975% overstated |

19.     **Statement No. 51**: On February 20, 2018, Fluor released its Q4 2017 financial statements and its fiscal year 2017 Form 10-K, which reported total revenue of approximately $19.5 billion for fiscal year 2017.  ¶155.  The Company also reported that it had recorded $124 million in

---

[9]     Backing out unspecified "discontinued operations," the Restatement references "as previously reported" revenue figures that do not match the revenue figures as disclosed in the Class Period financial statements and referenced in the Complaint.  As alleged herein, Fluor's revenue as disclosed during the Class Period was materially overstated in each quarterly and annual report during the Class Period as compared to the restated revenues provided in the Restatement.

claim revenue as of the end of 2017.  *Id.*  It credited growth in the Government and Power segments as driving revenues and profits.  *Id.*  The Company also reported pre-tax earnings of $387 million.

20.      In truth, as disclosed in the Restatement, total 2017 revenue was just $14.8 billion. The Restatement also revealed that Fluor's 2017 Form 10-K overstated Government segment revenue by $19.3 million  It also establishes that total segment profit was overstated by 7% – $508 million as restated versus $545 million as reported in the 2017 Form 10-K.  It establishes that the profit misstatement concerned the Government segment for which profit was overstated by more than 40% as a result of the Radford project – in the 2017 Form 10-K, Fluor disclosed Government segment profit of $127.9 million, but as evidenced by the Restatement, Government segment profit for fiscal year 2017 was only $90.6 million.  The Restatement reflects a $118 million cumulative error (amount of total profit overstated through December 31, 2017) on the Radford project.  The Restatement confirms that the "claim revenue" and total revenue recorded during this period was incorrect due to (i) "errors associated with variable consideration" that caused Fluor "to ***overstate revenue***" and (ii) "errors associated with forecasted costs" that caused Fluor "to ***understate cost of revenue*** between 2016 and September 30, 2019."  Finally, the Restatement illustrates that pre-tax earnings were overstated by 11% ($387 million reported as compared to $349 million restated).

21.      The following table graphically depicts the falsity of Statement No. 51 in light of Fluor's admissions in the Restatement:

| Metric | As Reported | As Restated | Percentage Over/Understated |
|--------|-------------|-------------|------------------------------|
| Government Revenue | $3,232.7 million | $3,213.4 million | 0.6% overstated |
| Total Segment Profit | $545 million | $508 million | 7% overstated |
| Government Profit | $127.9 million | $90.6 million | 1,975% overstated |
| Pre-Tax Earnings | $387 million | $349 million | 11% overstated |

- 10 -

22.     **Statement No. 53**: On May 3, 2018, Fluor released its Q1 2018 financial statements, which reported total revenue of approximately $4.8 billion for Q1 2018.  ¶157.  The Company also reported that it had recorded $134 million in claim revenue as of the end of Q1 2018.  *Id.*  It credited growth in the Government and Diversified Services segments as driving revenues and profits.  *Id.*  The Company also reported a net loss of $12 million.  *Id.*

23.     In truth, as disclosed in the Restatement, total Q1 2018 revenue was just $3.5 billion.  The Restatement also revealed that Fluor's Q1 2018 Form 10-Q overstated Government segment revenue by $10.1 million.  It also establishes that total segment profit was overstated by 28% – $41 million as restated versus $52.3 million as reported in the Q1 2018 Form 10-Q.  It establishes that profit for the Government segment was overstated by 19% as a result of the Radford project – in the Q1 2018 Form 10-Q, Fluor disclosed Government segment profit of $71.9 million, but as evidenced by the Restatement, Government segment profit for Q1 2018 was only $60.6 million.   The Restatement reflects a $130 million cumulative error (amount of total profit overstated through March 31, 2018) on the Radford project.  The Restatement confirms that the "claim revenue" and total revenue recorded during this period was incorrect due to (i) "errors associated with variable consideration" that caused Fluor "to **overstate revenue**" and (ii) "errors associated with forecasted costs" that caused Fluor "to **understate cost of revenue** between 2016 and September 30, 2019." Finally, the Restatement illustrates that the net loss was understated by 42% ($12.1 million loss reported as compared to $20.8 million loss restated).

24.     The following table graphically depicts the falsity of Statement No. 53 in light of Fluor's admissions in the Restatement:

| Metric | As Reported | As Restated | Percentage Over/Understated |
|---|---|---|---|
| Government Revenue | $1,327.2 million | $1,317.1 million | 0.8% overstated |
| Total Segment Profit | $52.3 million | $41 million | 28% overstated |

- 11 -

| Metric | As Reported | As Restated | Percentage Over/Understated |
|---|---|---|---|
| Government Profit | $71.9 million | $60.6 million | 19% overstated |
| Net Loss | $12.1 million | $20.8 million | 42% understated |

25.    **Statement No. 55**: On August 2, 2018, Fluor released its Q2 2018 financial statements, which reported total revenue of approximately $4.9 billion for Q2 2018.  ¶161.  The Company also reported that it had recorded $131 million in claim revenue as of the end of Q2 2018.  *Id.*  It credited growth in the Government, Power, and Diversified Services segments as driving revenues and profits.  *Id.*  The Company also reported net earnings of $115 million.  *Id.*

26.    In truth, as disclosed in the Restatement, total Q2 2018 revenue was just $3.9 billion.  The Restatement also revealed that Fluor's Q2 2018 Form 10-Q overstated Government segment revenue by $9.5 million, Infrastructure & Power segment revenue by $11.3 million, and Energy & Chemicals segment revenue by $2.1 million.  It also establishes that total segment profit was overstated by 27% – $152.2 million as restated versus $193.8 million as reported in the Q2 2018 Form 10-Q.  It establishes that profit for the Government segment was overstated by 23% as a result of the Radford project – in the Q2 2018 Form 10-Q, Fluor disclosed Government segment profit of $51.4 million, but as evidenced by the Restatement, Government segment profit for Q2 2018 was only $41.7 million.  The Restatement reflects a $139 million cumulative error (amount of total profit overstated through June 30, 2018) on the Radford project.  It also establishes that profit for the Infrastructure & Power segment was overstated by 222% – in the Q2 2018 Form 10-Q, Fluor disclosed Infrastructure & Power segment profit of $16.4 million, but as evidenced by the Restatement, Infrastructure & Power profit for Q2 2018 was only $5.1 million.  It further establishes that profit for the Energy & Chemicals segment was overstated by 27% – in the Q2 2018 Form 10-Q, Fluor disclosed Energy & Chemicals segment profit of $97.2 million, but as evidenced by the Restatement, Energy & Chemicals profit for Q2 2018 was only $76.6 million.  The Restatement

- 12 -

confirms that the "claim revenue" and total revenue recorded during this period was incorrect due to (i) "errors associated with variable consideration" that caused Fluor "to *overstate revenue*" and (ii) "errors associated with forecasted costs" that caused Fluor "to *understate cost of revenue* between 2016 and September 30, 2019."  Finally, the Restatement illustrates that net earnings were overstated by 48% ($114.8 million reported as compared to $77.4 million restated).

27. The following table graphically depicts the falsity of Statement No. 55 in light of Fluor's admissions in the Restatement:

| Metric | As Reported | As Restated | Percentage Over/Understated |
|---|---|---|---|
| Government Revenue | $863.4 million | $853.9 million | 1.1% overstated |
| Infrastructure & Power Revenue | $1,339.5 million | $1,328.2 million | 0.9% overstated |
| Energy & Chemicals Revenue | $2,014.5 million | $2,012.4 million | 0.1% overstated |
| Total Segment Profit | $193.8 million | $152.2 million | 27% overstated |
| Government Profit | $51.4 million | $41.7 million | 23% overstated |
| Infrastructure & Power Profit | $16.4 million | $5.1 million | 222% overstated |
| Energy & Chemicals Profit | $97.2 million | $76.6 million | 27% overstated |
| Net Earnings | $114.8 million | $77.4 million | 48% overstated |

28. **Statement No. 58**: On November 1, 2018, Fluor released its Q3 2018 financial statements, which reported total revenue of approximately $4.7 billion for Q3 2018.  ¶164.  The Company also reported that it had recorded $156 million in claim revenue as of the end of Q3 2018.  *Id.*  It credited growth in the Government and Power segments as driving revenues and profits.  *Id.*  The Company also reported net earnings of $77 million.  *Id.*

29. In truth, as disclosed in the Restatement, total Q3 2018 revenue was $3.8 billion.  The Restatement also revealed that Fluor's Q3 2018 Form 10-Q overstated Government segment revenue

by $11.8 million.  It also establishes that profit for the Government segment was overstated by 56% as a result of the Radford project – in the Q3 2018 Form 10-Q, Fluor disclosed Government segment profit of $32 million, but as evidenced by the Restatement, Government segment profit for Q3 2018 was only $20.5 million.  It reflects a $151 million cumulative error (amount of total profit overstated through September 30, 2018) on the Radford project.  It confirms that the "claim revenue" and total revenue recorded during this period was incorrect due to (i) "errors associated with variable consideration" that caused Fluor "to **overstate revenue**" and (ii) "errors associated with forecasted costs" that caused Fluor "to **understate cost of revenue** between 2016 and September 30, 2019."  Finally, the Restatement illustrates that net earnings were overstated by 4.4% ($77.3 million reported as compared to $74.1 million restated).

30.    The following table graphically depicts the falsity of Statement No. 57 in light of Fluor's admissions in the Restatement:

| Metric | As Reported | As Restated | Percentage Over/Understated |
|---|---|---|---|
| Government Revenue | $780.9 million | $769.1 million | 1.5% overstated |
| Government Profit | $32 million | $20.5 million | 56% overstated |
| Net Earnings | $77.3 million | $74.1 million | 4.4% understated |

31.    **Statement No. 59**: On February 21, 2019, Fluor released its fiscal year 2018 Form 10-K, which reported total revenue of approximately $19.2 billion for fiscal year 2018.  ¶165.  The Company also reported that it had recorded $166 million in claim revenue as of the end of 2018.  *Id.* It credited growth in the Government segment as driving revenues and profits, and stated that revenue in the Power and Diversified Services segments was flat.  *Id.*  The Company also reported pre-tax earnings of $482 million.  *Id.*  Finally, the Company reported total assets in the Government segment of $823 million.  *Id.*

- 14 -

32.     In truth, as disclosed in the Restatement, total 2018 revenue was just $15.2 billion. The Restatement also revealed that Fluor's 2018 Form 10-K overstated Government segment revenue by $47.4 million and Infrastructure & Power segment revenue by $14.1 million.  It also establishes that total segment profit was overstated by 13% – $532.1 million as restated versus $601.8 million as reported in the 2018 Form 10-K.  It establishes that profit for the Government segment was overstated by 45% as a result of the Radford project – in the 2018 Form 10-K, Fluor disclosed Government segment profit of $178.6 million, but as evidenced by the Restatement, Government segment profit for 2018 was only $123 million.  It reflects a $174 million cumulative error (amount of total profit overstated thorough December 31, 2018) on the Radford project.  It also establishes that profit for the Infrastructure & Power segment was overstated by 100% – in the 2018 Form 10-K, Fluor disclosed Mining, Industrial, Infrastructure & Power segment loss of $13.6 million, but as evidenced by the Restatement, Mining, Industrial, Infrastructure & Power loss for 2018 was actually $27.7 million.  It confirms that the "claim revenue" and total revenue recorded during this period was incorrect due to (i) "errors associated with variable consideration" that caused Fluor "to *overstate revenue*" and (ii) "errors associated with forecasted costs" that caused Fluor "to *understate cost of revenue* between 2016 and September 30, 2019."  The Restatement also reveals that total assets in the Government segment were overstated by 3% ($822.7 million reported as compared to $796.3 million restated).  Finally, the Restatement illustrates that net earnings were overstated by 17% ($482 million reported as compared to $412 million restated).

33.     The following table graphically depicts the falsity of Statement No. 59 in light of Fluor's admissions in the Restatement:

| Metric | As Reported | As Restated | Percentage Over/Understated |
|---|---|---|---|
| Government Revenue | $3,772.0 million | $3,724.6 million | 1.3% overstated |
| Infrastructure & | $5,186.1 million | $5,172.0 million | 0.3% overstated |

- 15 -

| Metric | As Reported | As Restated | Percentage Over/Understated |
|---|---|---|---|
| Power Revenue | | | |
| Total Segment Profit | $601.8 million | $532.1 million | 13% overstated |
| Government Profit | $178.6 million | $123 million | 45% overstated |
| Infrastructure & Power Profit | $27.7 million | $13.6 million | 100% overstated |
| Government Assets | $822.7 million | $796.3 million | 3% overstated |
| Net Earnings | $482 million | $412 million | 17% overstated |

34.     **Statement No. 62**: On May 2, 2019, Fluor released its Q1 2019 financial statements, which reported total revenue of approximately $4.2 billion for Q1 2019.  ¶168.  The Company also reported that it had recorded $175 million in claim revenue as of the end of Q1 2019.  *Id.*  It credited growth in the Power segment as driving revenues and profits and offsetting losses in other segments.  *Id.*  The Company also reported a net loss of $58 million.  *Id.*

35.     In truth, as disclosed in the Restatement, total Q1 2019 revenue was just $3.4 billion.  The Restatement also revealed that Fluor's Q1 2019 Form 10-Q overstated Government segment revenue by $9.5 million and Energy & Chemicals segment revenue by $2 million.  It establishes that profit for the Government segment was overstated by 35% as a result of the Radford project – in the Q1 2019 Form 10-Q, Fluor disclosed Government segment profit of $16.6 million, but as evidenced by the Restatement, Government segment profit for Q1 2019 was only $12.3 million.  It also reflects a $178 million cumulative error (amount of total profit overstated through March 31, 2019) on the Radford project.  The Restatement also establishes that profit for the Energy & Chemicals segment was overstated by 59% – in the Q1 2019 Form 10-Q, Fluor disclosed Energy & Chemicals segment profit of $19.4 million, but as evidenced by the Restatement, Energy & Chemicals segment profit for Q1 2019 was only $12.2 million.  It confirms that the "claim revenue" and total revenue recorded during this period was incorrect due to (i) "errors associated with variable consideration" that caused

- 16 -

Fluor "to **overstate revenue**" and (ii) "errors associated with forecasted costs" that caused Fluor "to **understate cost of revenue** between 2016 and September 30, 2019." Finally, the Restatement illustrates that net loss was understated by 15% ($58.4 million loss reported as compared to $68.9 million loss restated).

36.     The following table graphically depicts the falsity of Statement No. 62 in light of Fluor's admissions in the Restatement:

| Metric | As Reported | As Restated | Percentage Over/Understated |
|---|---|---|---|
| Government Revenue | $784.7 million | $775.2 million | 1.2% overstated |
| Energy & Chemicals Revenue | $1,476.6 million | $1,474.6 million | 0.1% overstated |
| Government Profit | $16.6 million | $12.3 million | 35% overstated |
| Energy & Chemicals Profit | $19.4 million | $12.2 million | 59% overstated |
| Net Loss | $58.4 million | $68.9 million | 15% understated |

**B.     The Restatement Further Supports a Strong Inference of Defendants' Scienter**

37.     As disclosed in the Restatement, the Company's Special Committee reported that "prior business line management applied **inappropriate pressure** to project personnel" to override project level controls, and that defendant Seaton's "management style may have fostered an environment that could have contributed to this conduct." Moreover, the Restatement "identified instances where individuals made **inappropriate adjustments** to project estimates and reserves" in what Fluor now describes as "immaterial amounts." Further, the Restatement revealed that former "leaders of our Energy & Chemicals segment caused pressure to be applied on the individuals charged with accounting and finance responsibilities in a manner intended to present **overly optimistic forecasts** across certain Energy & Chemicals projects. This resulted in a material

weakness in the Energy & Chemicals segment associated with its non-compliance with Fluor's policies and procedures designed to promote a commitment to ethical practices."

38.     Further, the Restatement is an admission that the financial results reported during the Class Period were incorrect based on information available to Defendants at the time the results were originally reported.   That is why the SEC often uses restatements to demonstrate that persons responsible for the improper accounting acted with scienter:

> *[T]he Commission often seeks to enter into evidence restated financial statements, and the documentation behind those restatements, in its securities fraud enforcement actions in order*, *inter alia*, to prove the falsity and materiality of the original financial statements [and] *to demonstrate that persons responsible for the original misstatements acted with scienter* . . . .[10]

39.     Additionally, from a GAAP and SEC accounting perspective, the Restatement contains the following indicators of Defendants' scienter:

(a)     ***The type of restatement (misuse of available facts)***.   The accounting errors identified in the Restatement are not the result of simple mathematical errors or honest misapplication of GAAP accounting standards.   For example, Fluor's numerous revenue restatement adjustments were the result of overstating revenue on unpriced changes orders, incentive fees, and contractual disputes and claims despite the fact that it was not probable such amounts would ever be collected by the Company.   Likewise, Fluor's numerous project cost restatement adjustments were the result of failing to timely recognize changes in forecasted project costs.   In both instances, the information to determine the correct amount of revenue and costs was contemporaneously available to Defendants but, due to "material errors" that "arose from a ***failure to timely recognize changes in forecasted project costs and from errors in estimating variable consideration in accounting*** for the Radford project," the revenue and costs were not properly recognized.   The accounting rules, as described herein, state that a restatement is not required, or even allowed, if the facts and

---

[10]     *See* https://www.sec.gov/litigation/briefs/sunbeam.htm.

Cases\4832-3582-2543.v1-10/29/20

circumstances giving rise to a restatement were not available at the time the original accounting entries were made. Thus, that the Restatement was even made establishes that Defendants possessed the facts to have properly reported in the first place.

(b)    *The duration over which the improper accounting was perpetrated*.  As detailed herein, the Restatement does not hinge on a good faith accounting mistake or oversight during a single quarter or even a single year.  Fluor restated its previously issued financial statements over an effective *four-year period*, spanning for three fiscal years – 2016, 2017, and 2018 – and every quarterly period in fiscal years 2018 and 2019.  The nature of the accounting errors at issue, overstating revenue and understating costs on fixed-price projects for years, caused the cumulative magnitude of the accounting errors to increase each quarter, thus becoming more apparent to Defendants over time.  For example, by Q1 2019, Defendants were confronted with numerous red flags indicating that the total project revenue on the Radford project had been overstated by *$90 million* to date and total project profit had been overstated by more than *$178 million* to date.

(c)    *The magnitude or size of the restatement*.  As described herein, the Restatement was clearly material.  The Company was forced to record more than *$230 million* in restatement adjustments related to overstated revenue and understated costs on the Radford project and other fixed-price projects.  In 2016 alone, Fluor was forced to restate more than $80 million in Government segment profit related to overstated revenue and understated costs.  To put this amount in context, Fluor's originally reported Government segment profit in 2016 was overstated by *1,975%* after taking into account the Restatement adjustments.  In numerous other periods, as detailed above, the restatement adjustments revealed that Fluor's originally issued financial results overstated segment profits by between 19% and 222%.

- 19 -

## II.     THE DOJ INVESTIGATION FURTHER SUPPORTS A STRONG INFERENCE OF SCIENTER

40.     On May 8, 2020, Fluor filed a Form 8-K to disclose that, in addition to the SEC investigation (*see* ¶¶212-213), the U.S. Department of Justice ("DOJ") had opened a criminal investigation into the Company's prior financial reporting, governance matters, and the charges on fixed-price projects that the Company recorded in Q2 2019:

> On February 18, 2020, Fluor Corporation (the "Corporation") announced that the Securities and Exchange Commission ("SEC") is conducting an investigation and has requested documents and information related to projects for which the Corporation recorded charges in the second quarter of 2019. On April 30, 2020, the Corporation received a subpoena from the U.S. Department of Justice ("DOJ") seeking documents and information related to the second quarter 2019 charges; certain of the projects associated with those charges; and certain project accounting, financial reporting and governance matters. The Corporation is coordinating its response to the SEC and DOJ and cooperating in providing the requested documents and information. As previously disclosed, a special committee of the Board of Directors is independently conducting a review of the Corporation's prior period reporting and related control environment, which is ongoing.

41.     As of the date of this supplement, the SEC and DOJ investigations into these issues are still ongoing. Both support a strong inference of Defendants' scienter – one that will only grow as the investigations unfold and additional evidence and factual findings become available.

DATED: October 29, 2020          KENDALL LAW GROUP, PLLC
                                 JOE KENDALL (Texas Bar No. 11260700)


                                 _____
                                          */s/ Joe Kendall*
                                        JOE KENDALL

                                 3811 Turtle Creek Blvd., Suite 1450
                                 Dallas, TX  75219
                                 Telephone:  214/744-3000
                                 214/744-3015 (fax)
                                 jkendall@kendalllawgroup.com

                                 Local Counsel for Wayne County Employees'
                                 Retirement System

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARRYL J. ALVARADO
KEVIN S. SCIARANI
J. MARCO JANOSKI GRAY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com
ksciarani@rgrdlaw.com
mjanoski@rgrdlaw.com

POMERANTZ LLP
JEREMY A. LIEBERMAN
MATTHEW L. TUCCILLO
J. ALEXANDER HOOD II
JENNIFER BANNER SOBERS
600 Third Avenue, 20th Floor
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mltuccillo@pomlaw.com
ahood@pomlaw.com
jsobers@pomlaw.com

POMERANTZ LLP
PATRICK V. DAHLSTROM
Ten South LaSalle Street, Suite 3505
Chicago, IL  60603
Telephone:  312/377-1181
312/377-1184 (fax)
pdahlstrom@pomlaw.com

Lead Counsel for Lead Plaintiffs

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Wayne County Employees'
Retirement System

- 21 -

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE (Texas Bar No. 24001788)
3131 McKinney Avenue, Suite 600
Dallas, TX  75204
Telephone:  214/643-6011
281/254-7789 (fax)
wbriscoe@thebriscoelawfirm.com

Local Counsel for the Town of Fairfield Employees'
Retirement Plan and the Town of Fairfield Police and
Firemen's Retirement Plan

- 22 -