UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIN-YIP CHUN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>FLUOR CORPORATION, et al.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:18-CV-01338-X |

**MEMORANDUM OPINION AND ORDER**

Given recent events in this state, the Court and all Texans appreciate the importance of well-built and well-maintained gas-fired power plants.[1] Defendant Fluor Corporation once contracted to build several gas-fired power plants. The projects encountered problems, Fluor lost money, and its investors filed this suit under the Public Securities Litigation Reform Act claiming fraud. The Court previously dismissed this case without prejudice and allowed the plaintiffs[2] one last chance to replead.[3]

After careful consideration, and as explained below, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion to dismiss [Doc. No. 112],

[1] *See* Nomaan Merchant, *Power failure: How a winter storm pushed Texas into crisis*, AP NEWS (Feb. 21, 2021), https://apnews.com/article/houston-football-storms-coronavirus-pandemic-hurricanes-5fd491ed5bfd9aa0ae08426c6078539e.

[2] The Court refers to the lead plaintiffs (Wayne County Employees Retirement System and the Town of Fairfield Employees' Retirement Plan, the Town of Fairfield Police and Firemen's Retirement Plan) throughout this opinion as "the plaintiffs." *See* Doc. No. 110 (maintaining these plaintiffs as lead plaintiffs after granting an intervention and consolidating a similar action).

[3] Doc. No. 89.

**GRANTS IN PART** and **DISMISSES IN PART** the Defendants' request for consideration of documents [Doc. No. 114], **DENIES** the Plaintiffs' request for consideration of documents [Doc. No. 129], and **DENIES** the Plaintiffs' motion to amend [Doc. No. 130].

## I. Facts

The Court recited this case's relevant undisputed facts in its prior Memorandum Opinion and Order. So this time the Court will be brief. Fluor is a Texas company that formerly engineered and constructed gas-fired power plants for a fixed price. After four of its projects encountered struggles that led to significant losses, Fluor bowed out of this fixed-price, gas-fired business. Several investors filed this class-action suit, alleging that the defendants (Fluor and members of its leadership) bid unrealistically low on these projects and misrepresented their bidding strategy as careful and conservative. They also argued that the defendants lied to investors, telling them these projects were on schedule when they knew they were not. And the plaintiffs accused the defendants of intending to deceive investors by their statements, or at the very least making the statements in a severely reckless manner—an allegation otherwise known as scienter.

The defendants moved to dismiss, arguing that the plaintiffs did not plead fraud with sufficient specificity and did not properly allege scienter. The Court agreed and dismissed the initial complaint without prejudice, allowing the plaintiffs to replead. They did so, and the defendants again moved to dismiss.

## II. Legal Standard

In response to abusive private securities-fraud actions, Congress enacted the Private Securities Litigation Reform Act of 1995 (the Act).[4] The Act includes "[e]xacting pleading requirements" to curb excessive litigation.[5] To adequately plead a private securities-fraud claim, as here, the plaintiff must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.* the defendant's intention to deceive, manipulate, or defraud."[6]

Particularity requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed."[7] To meet the Act's pleading requirements with regard to scienter, the "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."[8]

To determine whether a plaintiff satisfied scienter pleading requirements in the context of Federal Rule of Civil Procedure 12(b)(6), courts must first, as with any Rule 12(b)(6) motion to dismiss, "accept all factual allegations in the complaint as true."[9] Second, "courts must consider the complaint in its entirety," in addition to

[4] 15 U.S.C. § 78u-4.

[5] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

[6] *Id.* (quotation marks omitted).

[7] 15 U.S.C. § 78u-4(b)(1).

[8] *Tellabs*, 551 U.S. at 314.

[9] *Id.* at 322.

other sources courts normally examine, particularly "documents incorporated into the complaint by reference . . . and matters of which a court may take judicial notice."[10] That inquiry requires courts to determine "whether *all* the facts alleged, taken collectively, give rise to a strong inference of scienter," not merely a single allegation.[11] Third, to decide "whether the pleaded facts give rise to a 'strong' inference of scienter," courts must consider "plausible opposing inferences."[12]

Put simply, the heightened pleading standards under the Act require plaintiffs to: (1) state the facts alleging the violation with particularity and (2) state the facts alleging scienter with particularity. The plaintiffs must do this for every individual defendant; group pleading will not pass muster.[13] And importantly, plaintiffs must allege that the statements at issue were false when made.[14] Finally, regarding statements and omissions, plaintiffs "must specifically plead when a given disclosure should have been made."[15] This is a high threshold that both includes—and exceeds—the requirements of Federal Rule of Procedure 9(b).[16]

---

[10] *Id.*

[11] *Id.* at 323.

[12] *Id.*

[13] *See Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (finding that "the PSLRA requires the plaintiffs to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud" (quotation marks omitted)).

[14] *Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019).

[15] *Id.*

[16] *See Tellabs*, 551 U.S. at 319 ("Prior to the enactment of the [Act], the sufficiency of a complaint for securities fraud was governed . . . by the heightened pleading standard set forth in Rule 9(b).").

## III. Analysis

Before turning to the motion to dismiss, the Court must do some housekeeping and address the other outstanding motions in this case.

First, the Court grants in part and dismisses in part the defendants' motion for judicial notice. While the Court already "accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff,"[17] the Court must take judicial notice of certain documents incorporated into the complaint by reference and other matters of public record.[18] The plaintiffs object to the consideration of only two of the fifteen documents the defendants raise: an April 2014 letter between Fluor and Mitsubishi (the manufacturer of its gas-fired plant turbines), and a "purported earnings call transcript."[19] The Court grants the motion for judicial notice as to all unobjected documents. And because the Court does not rely on either disputed document when ruling on the motion to dismiss, the Court dismisses the defendants' motion for judicial notice as to those two documents as moot.

The Court also denies the plaintiffs' request for consideration of documents. Unlike the defendants, the plaintiffs ask the Court to take notice of four documents that the complaint does not reference.[20] When deciding a motion to dismiss, the Court

[17] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

[18] *See Tellabs,* 551 U.S. at 322.

[19] Doc. No. 128 at 1.

[20] Namely, several filings with the U.S. Securities and Exchange Commission detailing an ongoing Department of Justice investigation into Fluor, Fluor's restatement of several financial statements, and Fluor's corporate reorganization plans. *See* Doc. No. 129 at 2. These filings occurred after the plaintiffs filed their current complaint.

generally takes judicial notice only of documents referenced in the complaint, documents attached to the complaint, and matters of public record.[21]  These documents do not fit that description and add only additional (but not necessary) context to the existing pleadings.  The Court therefore denies the plaintiffs' request for consideration of documents.

Lastly, the Court denies the plaintiffs' motion to amend the pleadings.  While Rule 15(a) "evinces a bias in favor of granting leave to amend, it is not automatic."[22]  The Court may deny leave to amend based on factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, and futility of amendment.[23]  The First Amended Complaint is already gargantuan—160 pages in length.  The Court informed the plaintiffs several times that this repleading would be their last.[24]  By the plaintiffs' own admission, the proposed amendments do not add any necessary substance to their already-substantial repleading.[25]  And further bites at the proverbial apple would prejudice the defendants by delaying this

---

[21] *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[22] *In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (quotations omitted).

[23] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[24] Doc. No. 89 at 7; Doc. No. 123 at 2 ("[T]he Court reminds the lead plaintiffs of its prior position: that the lead plaintiffs' current complaint is their final one.  The Court does not expect its position to change.").

[25] Doc. No. 130, Exhibit 2 at 1 (stating that their amendments only "corroborate and enhance" the existing complaint).  As such, the proposed additional allegations are merely "more cowbell."  *See Saturday Night Live: More Cowbell* (NBC television broadcast Apr. 8, 2000).

suit's conclusion and subjecting the defendants to additional costs.[26] So the Court denies the motion.

### A. Particularized Claims

Now for the main event: the defendants' motion to dismiss. The plaintiffs' complaint alleges that the defendants committed securities fraud by (1) repeatedly making false and misleading statements and omissions and (2) doing so with scienter. The defendants argue that this complaint does not fix the original complaint's failure to allege fraud with particularity, calling this a case of "fraud by hindsight."[27] The defendants claim that: (1) when initially bid for and undertaken, the projects appeared to be stable investments, and (2) the plaintiffs cannot claim their statements to investors about the projects' progress and overall stability were false when made by pointing accusatorily at the losses and setbacks the projects ultimately suffered.[28]

The complaint contains several allegedly false or misleading statements or omissions, and the Court divides them into the following categories according to subject matter:

- Statements regarding Fluor's bidding and risk management process (Statements 1–19);
- Statements about the gas-fired plants (Statements 20–36);

[26] *See Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (finding no abuse of discretion when district court denied amendment because the defendant "should not be subjected to any further costs of litigation in this lawsuit").

[27] Doc. No. 112 at 1.

[28] *Id.*

- Statements about Fluor's disclosure controls, its procedures, and its reported revenue (Statements 37–63); and
- Omissions of material information (Statement 64).

A few of these statements and omissions, combined with the complaint's well-pled particularized facts, amount to properly stated fraud claims. Most do not. The Court will examine each category individually to determine which claims the plaintiffs properly stated and which claims they did not.

1. Risk Management and Bidding Process

First, the plaintiffs fault Fluor for several statements to investors emphasizing that its "bids were conservative and that Fluor was remarkable in its ability to execute projects on time and on budget."[29] In summary, Fluor's representatives told investors that the company had extensive risk management experience and that it might refuse more potentially problematic contracts that its competitors would pursue. Fluor also stated to analysts and investors alike that, notwithstanding certain risks inherent in fixed-price construction contracts, it was comfortable with the amount of risk it was undertaking in its business. And Fluor emphasized that it took care in choosing which projects to pursue. The company believed this approach would lead to profitability. For instance, an executive told investors that Fluor would not pursue contracts the company viewed as borderline or risky.

[29] Doc. No. 90 at 31.

Fluor later admitted that "10 of the 12 [gas-fired projects] have underperformed our as-sold expectations, with 3 suffering losses."[30] The plaintiffs ask the Court to find that these later admissions (among other similar disclosures) demonstrate that "Fluor's gas-fired power plant bids were never realistic," and Fluor therefore misled its investors and committed fraud when it generally commented on the conservative nature of its business when compared to other fixed-price power project companies.[31]

The plaintiffs do not allege fraud with particularity because the statements they cite cannot support a fraud claim. "[G]eneralized, positive statements about [a] company's competitive strengths, experienced management, and future prospects" are nonactionable.[32] All the defendants' statements regarding Fluor's approach to risk management fall into this category. Additionally, Fluor's later statements do not demonstrate that Fluor's earlier statements about its bidding processes were false when made.[33] Fluor never told investors that the specific contracts at issue in this suit lacked any risk of loss. It told them that Fluor found the amount of overall risk

---

[30] *Id*. at 143.

[31] *Id*. at 40.

[32] *Rosenzweig v. Azurix Corp*., 332 F.3d 854, 869 (5th Cir. 2003). *Cf.* Will Ferrell: Buddy, ELF (New Line Cinema 2003) (commending restaurant staff for having the self-proclaimed "world's best cup of coffee").

[33] *Masel*, 924 F.3d at 749; *see City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 187 (2d Cir. 2014) ("We do not recognize allegations of fraud by hindsight."); *see also Owens v. Jastrow*, 789 F.3d 529, 545 (5th Cir. 2015) (quoting *City of Pontiac*'s holding approvingly).

in the contracts acceptable.[34] The plaintiffs therefore do not state a securities fraud claim regarding Statements 1–19.

2. The Gas-Fired Power Plants

The plaintiffs next take issue with multiple statements that Fluor and its leadership made about construction progress on their gas-fired power plants. Most of these statements are expressions of specific executives' feelings about the projects' progress. For instance, Fluor's CEO told investors that he felt "very comfortable" taking on the fixed-price projects and did not think their risk profile had increased.[35] Such statements amount to opinions "about [Fluor's] competitive strengths, experienced management, and future performance." They are therefore (like Statements 1–19) not actionable.[36]

But a few statements the plaintiffs point out are more troubling. In November 2014, one of Fluor's executives (defendant Matthew McSorley) told investors that all of the company's fixed-price contracts in the four or five years prior to November 2014 were "on budget, on schedule, no claims[,]"[37] and that one specific fixed-price power project (the Brunswick plant) was "on track, on schedule and cost."[38] The company

[34] *See* Doc. No. 90 at 34 ("Fixed-price contracts, obviously, have a risk element that is fixed cost and fixed schedule. . . . We are very comfortable with that risk and we are very comfortable with this risk profile.").

[35] *Id.* at 44.

[36] *Rosenzweig*, 332 F.3d at 869 (calling such statements "immaterial").

[37] Doc. No. 90 at 44 (Statement 24).

[38] *Id.* (Statement 25).

stated something similar in its Annual Report, released in March 2015: "The [Brunswick] project is about 40% finished, on schedule and on budget."[39]

However, on October 29, 2015, Fluor announced a $21 million charge related to Brunswick. The project's issues were then in the open. Fluor's CEO admitted to investors in 2017 that their fixed-price power plant projects had "a fundamental problem . . . due to improper estimating, craft productivity, and equipment issues" involving turbines that "were not in line with our bid assumptions[.]"[40] These issues "forced [Fluor] to accelerate the construction process [at Brunswick] at great additional cost."[41] The question is whether any of the defendants knew that Statements 24, 25, and 26 were misleading when made. The Court will examine these Statements for that required state of mind next.

Most of the plaintiffs' scienter allegations refer to the defendants as a group—an approach to pleading that the Fifth Circuit banned.[42] The Court will not "construe allegations contained in the [c]omplaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."[43] While it may be simple to tie statements in an earnings call

---

[39] *Id.* (Statement 26).

[40] *Id.* at 89.

[41] *Id.* at 91.

[42] *Southland*, 365 F.3d at 365.

[43] *Id.*; *see also VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 655 (N.D. Tex. 2020) (Starr, J.) ("[S]aying 'y'all are fraudsters' . . . falls short of [fraud pleading] standards—notwithstanding the inestimable power of the word 'y'all'"). The plaintiffs cannot skirt this requirement by arguing that "[t]he Individual Defendants, because of their positions, possessed the power and authority to control the contents" of Fluor's communications with investors. Doc. No. 90 at 18. The Fifth Circuit cut off this escape route by ruling that "corporate officers may not be held

to a single defendant, the plaintiffs may attribute corporate documents with no specific author to a defendant only if "specific factual allegations link the individual to the statement at issue . . . [including] a signature on the document."[44] In addition, the plaintiffs base many scienter accusations on confidential witness statements. But the Court will not entertain scienter allegations from confidential sources.[45]

Mr. McSorley, one of the defendants, made Statements 24 and 25. The 2014 Annual Report contains Statement 26. Defendants David T. Seaton, Biggs C. Porter, and Gary G. Smalley signed the Report.[46] The Court must therefore examine the plaintiffs' complaint for pleadings that would tend, taken together, to show scienter regarding these specific statements.

The Court finds no particularly stated claim of "intention to deceive, manipulate, or defraud" regarding McSorley's statements. The plaintiffs barely mention McSorley in their complaint's section on scienter, pointing primarily to his stock trades as evidence of deceptive intent. As none of these trades occurred between January 2014 and October 2015, this evidence does not support a finding that McSorley acted with scienter. The plaintiffs therefore ultimately fail to state a claim of securities fraud against McSorley.

---

responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded." *Southland*, 365 F.3d at 365.

[44] *Id.*

[45] *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008) (holding that "courts must discount allegations from confidential sources" in scienter analysis).

[46] *Fluor 2014 Annual Report*, FLUOR INVESTOR RELATIONS, 92 (Feb. 18, 2015), https://investor.fluor.com/static-files/8c1951e3-b893-4141-a5eb-b627270e976f.

But the plaintiffs recite far more persuasive scienter evidence mentioning Seaton, Porter, and Smalley—including extensive stock trading by all three executives during the aforementioned window when executives may have known about Brunswick's issues and investors did not.[47] "Allegations of insider trading are essentially a form of motive and opportunity allegations," and well-pled allegations like these "may meaningfully enhance the strength of the inference of scienter."[48] Such allegations do not always, however, "create a strong inference of scienter" by themselves.[49] The Fifth Circuit found, for instance, that trades by only some (but not all) defendants during the class period "do not give rise to scienter."[50] To determine whether Seaton, Porter, and Smalley's stock trades evince scienter, the Court looks to the "timing [and] scope" of the trades,[51] considering "plausible nonculpable explanations" for such trading as well.[52]

In their motion to dismiss, the defendants argue that these sales were "unremarkable" in timing, and do not represent a significant departure from usual trading behavior.[53] The defendants state that all but one individual defendant

---

[47] Doc. No. 90 at 108–17, 122–24; *see Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 435 (5th Cir. 2002) (holding that stock sales occurring "at suspicious times or in suspicious amounts," including sales "at times calculated to maximize personal profit," are probative of scienter). These stock trades are the only sufficiently specific evidence the defendants offer against Seaton, Porter, and Smalley during this time period.

[48] *Southland*, 365 F.3d at 368 (quotations omitted).

[49] *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 553 (5th Cir. 2007).

[50] *Abrams*, 292 F.3d at 435.

[51] *See Nathenson v. Zonagen Inc.*, 267 F.3d 400, 421 (5th Cir. 2001).

[52] *Cent. Laborers' Pension Fund*, 497 F.3d at 553.

[53] Doc. No. 112 at 54.

"ended the putative class period with fewer shares of Fluor's common stock than the complaint alleges he held at the beginning."[54] The defendants point to *Southland*, a Fifth Circuit case where that court ruled that "the fact that other defendants did not sell their shares during the relevant class period" undermined the plaintiffs' allegation of scienter.[55] But the defendants also admit that they sold stock during the class period, so this case does not help them. In contrast to the defendants, the plaintiffs note several trades that Seaton, Porter, and Smalley made between January 2014 and October 2015, pleading that these trades appear suspicious based on their timing and size, and tying them directly to the defendants' false public statements about Brunswick.[56] The defendants' explanation for these stock trades is therefore at least as compelling as any explanation the defendants provide for these trades. The Court finds that Seaton, Porter, and Smalley's stock trades between January 2014 and October 2015 support a "cogent and compelling" inference of scienter and holds that the plaintiffs' securities-fraud claim regarding Statement 26 survives the motion to dismiss as to these defendants.

But none of the other pleaded statements about the gas-fired power plants ground a plausible claim of securities fraud. According to the complaint, many of Fluor's other fixed-price projects experienced similar issues after Brunswick showed

---

[54] *Id.* at 46.

[55] 365 F.3d at 369.

[56] Doc. No. 90 at 113 (Seaton), 117 (Porter), 124–25 (Smalley). Seaton made three separate stock sales of about $2.3 million, $6.8 million, and $1.6 million. In that same time range, Porter sold $95,263 and $132,168. And Smalley made five sales of $163,071, $28,202, $93,674, $59,298, and $102,312. These trades usually occurred just after Fluor announced its yearly financial results or communicated to investors that the Brunswick project was on track.

flaws (and after several defendants assured investors that they did not believe Brunswick's issues were symptomatic across all fixed-price projects).[57] But even if all of Fluor's gas-fired plant projects had similar problems to Brunswick, the plaintiffs only pled that Fluor leadership told investors that *Brunswick itself* was on track when they knew it was not. The plaintiffs do not plead any facts that show when Fluor should have specifically disclosed that, due to unmitigable issues with construction and labor, other fixed-price power projects were in serious trouble.[58] The plaintiffs therefore do not state a claim with respect to any other statements about gas-fired power plants.

In fact, most of the remaining statements the plaintiffs highlight are not false or misleading at all. For instance, the plaintiffs summarize Statement 32 this way: "On the earnings call, [Fluor's CEO] represented that a new management team had reviewed the Gas-Fired Plants and any problems were captured in the newly announced forecast."[59] The complaint then goes on to allegedly quote the CEO's statement from that earnings call. The first part of this summary, according to the complaint's recitation of this alleged statement, is accurate. The second is not.[60] Fluor's CEO never said in Statement 32 that their forecast contained every problem

---

[57] *Id.* at 50–51.

[58] *Masel,* 924 F.3d at 749 (requiring the plaintiff to "specifically plead when a given disclosure should have been made").

[59] Doc. No. 90 at 52.

[60] *Id.* at 52–53 ([Fluor's CEO:] "[The new management] team, in coming to this role, led a review of the 3 projects in the second quarter and developed a path forward that is reflected in our current estimates. . . . We—as I said, we've changed the review process to where there's more cold eyes review. And I feel reasonably good about where we are.").

with their projects. Instead, the CEO said he felt "reasonably good" about the increased "cold eyes review" their new management team instituted.[61]

As another example, take Statement 33, where Fluor's CEO expressed confidence that the company's gas-fired projects were on track. The plaintiffs mischaracterize this statement as "assur[ing] investors that the Gas-Fired Plants would be completed within the charges that the Company took."[62] But as before, the plaintiffs' summary does not accurately reflect what the plaintiffs allege Fluor's CEO actually stated. These statements, like the others the plaintiffs criticize, are merely subjective expressions of confidence about company operations, which (as the Court mentioned) are not actionable.[63]

The Court therefore finds that the plaintiffs fail to state a claim with respect to Statements 20–25 and 27–36.

3. Controls, Procedures, and Revenue

The plaintiffs next pivot to an argument they added when they amended their complaint: that the defendants misled investors about Fluor's internal controls, procedures, and reported revenue. Fluor's leadership told investors that it believed its disclosure controls and procedures were "effective"[64] and that any "[c]hanges in total estimated contract cost" were reflected "in the period they [were] determined."[65]

---

[61] *Id.*

[62] Doc. No. 90 at 53.

[63] *See Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184 (2015) (explaining that plaintiffs may only challenge factual assertions, not opinions or beliefs, when alleging fraud).

[64] Doc. No. 90 at 56–57.

[65] *Id.* at 58.

Members of leadership also stated that Fluor was increasing independent and additional review of "critical projects."[66] But after reporting losses on gas-fired power contracts, Fluor's CEO admitted that the bidding process on those contracts exhibited "fatal flaws" that the company had since spent significant time addressing.[67] After listing the contents of several revenue reports, the plaintiffs end their litany of allegations by stating that "[t]he failure of Fluor's project governance processes and controls rendered Defendants' statements about internal controls and procedures, disclosure controls and procedures, and revenue recognition policies materially misleading."[68]

The plaintiffs still do not plausibly allege that any of the defendants' statements were false when made,[69] or (in some cases) specify how the defendants' procedures and policies were inadequate in the first place.[70] Moreover, Fluor's alleged failure to disclose certain problems with its fixed-price plants in its accounting statements does not mean Fluor's predictions of growth were fraudulent. The plaintiffs never allege that Fluor did not take these problems into account when making its predictions.[71] And secondly, the plaintiffs never factually allege that the

[66] *Id*. at 67.

[67] *Id*. at 72.

[68] *Id*. at 81.

[69] *Masel*, 924 F.3d at 749.

[70] *See* 15 U.S.C. § 78u–4(b)(1)(B) (requiring particularity when pleading securities fraud as to "the reason or reasons why the statement is misleading").

[71] *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 360–61 (5th Cir. 2002) (dismissing fraud claims because the plaintiffs "failed to plead why [the defendant's] awareness of these losses and problems" rendered the defendant's growth predictions for their overall business false when made).

defendants possessed any information that would have shown their accounting assumptions about their gas-fired projects were incorrect at the time they were made.[72] The plaintiffs therefore fail to state a claim regarding Statements 37–63.

4. Omissions

And finally, the plaintiffs allege Fluor's leadership violated its "duty to disclose the existence of significant open claims, unapproved change orders, and unresolved disputes" regarding gas-fired fixed-price contracts.[73] But once again, the plaintiffs' own complaint belies this statement. Fluor's accounting statement does not create any such duty. Rather, it requires the company to prepare "estimates of costs" for in-progress contracts based on evaluation of contingencies including "change orders, liability claims, [and] contract disputes," and to "update" the public when those estimates change.[74] The defendants' decision not to inform the public about every contingency that contributed to their estimates was not fraud because the defendants had no duty to disclose this information.[75] Moreover, the plaintiffs never allege with particularity what claims, orders, or disputes the defendants did not report.[76] So the plaintiffs fail to state a claim of fraud with respect to Statement 64 as well.

---

[72] *See Omnicare*, 575 U.S. at 185–89 (contrasting non-actionable statements of belief with actionable statements of material fact).

[73] Doc. No. 90 at 86.

[74] *Id.*

[75] *See S.E.C. v. Fox*, 654 F. Supp. 781, 790 (N.D. Tex. 1986) (Woodward, C.J.) (finding that "[t]here can be no fraud without the duty to disclose or abstain").

[76] *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976) (requiring plaintiffs pleading securities fraud to "state with particularity . . . the facts concerning the alleged violation").

IV. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** the defendants' Motion to Dismiss. The Court **DISMISSES WITH PREJUDICE** all allegations—excluding those related to Statement 26 as to defendants Seaton, Porter, and Smalley—in the Amended Complaint. And the Court **DENIES** the plaintiffs' Request for Judicial Notice, **GRANTS IN PART** and **DISMISSES IN PART** the defendants' Request for Judicial Notice, and **DENIES** the plaintiffs' Motion to Amend the Complaint.

**IT IS SO ORDERED** this 5th day of May, 2021.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE