UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| KIN-YIP CHUN, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:18-cv-01338-X |
| | § | <u>CLASS ACTION</u> |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| FLUOR CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS AND MEMORANDUM
IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ........................................................................................1

II.  SUMMARY OF THE LITIGATION ........................................................2

III.  THE SETTLEMENT TERMS...................................................................5

IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................7

    A.  The Public Interest Favors the Settlement of Complex, Class Actions ..................7

    B.  The Applicable Criteria for Preliminary Approval ...................................8

        1.  Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class.........................................................9

        2.  The Arm's Length Settlement Lacked Any Fraud or Collusion...............10

        3.  The Settlement Relief Is Sufficient Given the Costs, Risks and Delays of Further Litigation.........................................................10

            a.  Risks in Proving Liability and Damages and in Certifying the Class...........................................................11

            b.  The Actin's Complexity, Expense, and Likely Duration...............12

        4.  The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery .........................................................14

        5.  The Opinion of Lead Counsel................................................................14

        6.  The Settlement Satisfies the Remaining Rule 23(e)(2) Factors...............14

            a.  The Proposed Distribution Method Is Effective ...........................14

            b.  Attorneys' Fees ...........................................................................16

            c.  There is Only a Standard Supplemental Agreement.....................17

            d.  Settlement Class Members Are Treated Equitably.......................17

V.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS TO PERMIT DISSEMINATION OF THE NOTICE ...........................................................18

    A.  Rules 23(a) and 23(b)(3) Factors Are Satisfied ...................................18

        1.  The Settlement Class Has Numerosity .......................................19

|  | 2. | There Are Common Questions of Law or Fact | 19 |
|  | 3. | Lead Plaintiffs' Claims Are Typical | 20 |
|  | 4. | Lead Plaintiffs Have Fairly and Adequately Protected the Settlement Class's Interests | 20 |
|  | 5. | Common Questions of Law or Fact Common Predominate and a Class Action Is Superior for Adjudicating the Controversy | 22 |
| VI. | | NOTICE TO THE SETTLEMENT CLASS IS APPROPRIATE | 23 |
| VII. | | PROPOSED SCHEDULE | 24 |
| VIII. | | CONCLUSION | 25 |

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...................................................................................13

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................................22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)...................................................................................................23

*Basic v. Levinson*,
  485 U.S. 224 (1988)...................................................................................................23

*Buettgen v. Harless*,
  No. 3:09-CV-791-K, 2011 U.S. Dist. LEXIS 53888
  (N.D. Tex. May 19, 2011)....................................................................................21, 22

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ....................................................................................7

*Deka Investment GMBH v. Santander Consumer USA Holdings Inc.*,
  No. 3:15-cv-02129-K, 2021 WL 118288
  (N.D. Tex. Jan. 12, 2021)..........................................................................................16

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
  431 U.S. 395 (1977)...................................................................................................21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)...................................................................................................23

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
  630 F. Supp. 482 (E.D. Pa. 1985) ............................................................................14

*In re Apollo Grp., Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
  (D. Ariz. Aug. 4, 2008), *rev'd and remanded on other grounds*,
  2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010)............................................13

*In re Beef Indus. Antitrust Litig.*,
  607 F.2d 167 (5th Cir. 1979) ...............................................................................18, 19

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ...............................................................................19, 22

Page

*In re Deepwater Horizon*,
  785 F.3d 1003 (5th Cir. 2015) ................................................................................21

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching:*
  *Grades 7-12 Litig.*,
  MDL No. 1643, 2006 U.S. Dist. LEXIS 9726
  (E.D. La. Mar. 13, 2006)........................................................................................23

*In re EZCorp, Inc. Sec. Litig.*,
  No. 1:15-cv-00608-SS, 2019 WL 6649017
  (W.D. Tex. Dec. 6, 2019)........................................................................................16

*In re OCA, Inc.*,
  No. 05-2165, 2008 U.S. Dist. LEXIS 84869
  (E.D. La. Oct. 17, 2008)..........................................................................................19

*In re Willbros Group, Inc. Sec. Litig.*,
  407 F. Supp. 3d 689 (S. D. Tex. 2018) ...................................................................16

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ..................................................................................20

*Kamakana v. City & Cty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ................................................................................17

*Ludlow v. BP, P.L.C.*,
  800 F.3d 674 (5th Cir. 2015) ..................................................................................23

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ....................................................................................7

*Manchaca v. Chater*,
  927 F. Supp. 962 (E.D. Tex. 1996) .....................................................................9, 12

*Marcus v. J.C. Penney Co.*,
  No. 6:13-cv-736-MHS-KNM, 2016 U.S. Dist. LEXIS 115795
  (E.D. Tex. Aug. 29, 2016) ......................................................................................22

*Marcus v. J.C. Penny Co., Inc.*,
  No. 6:13-cv-00736-RWS-KNM, 2018 WL 11275437
  (E.D. Tex. Jan. 5, 2018) ..........................................................................................16

*McNamara v. Bre-X Minerals Ltd.*,
  214 F.R.D. 424 (E.D. Tex. 2002)............................................................................18

*McNamara v. Felderhof*,
  410 F.3d 277 (5th Cir. 2005) ..................................................................................12

4883-5467-8298.v1

Page

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ......................................................................7

*Mullen v. Treasure Chest Casino, L.L.C.*,
   186 F.3d 620 (5th Cir. 1999) ....................................................................20

*Oscar Private Equity Invs. v. Holland*,
   No. 3:03-CV-2761-H, 2005 U.S. Dist. LEXIS 6525
   (N.D. Tex. Apr. 15, 2005), *vacated and remanded on other grounds sub nom.*
   *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*,
   487 F.3d 261 (5th Cir. 2007) ....................................................................20

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ....................................................................9

*Parmelee v. Santander Consumer USA Holdings Inc.*,
   No. 3:16-cv-00783-K, 2019 WL 2352837
   (N.D. Tex. June 3, 2019)...........................................................................16

*Pearson v. Ecological Sci. Corp.*,
   522 F.2d 171 (5th Cir. 1975) ......................................................................7

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ..................................................................14

*Prause v. TechnipFMC, PLC*,
   No. 4:17-cv-2368, 2020 WL 3549686
   (S.D. Tex. Mar. 9, 2020)...........................................................................22

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry*
   *v. Anderson*,
   390 U.S. 414 (1968)..................................................................................12

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...........................................................9, 10, 14

*Salinas v. Roadway Express, Inc.*,
   802 F.2d 787 (5th Cir. 1986) ......................................................................9

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ....................................................................22

*Schwartz v. TXU Inc.*,
   No. 3:02-cv-2243-K, 2005 WL 3148350
   (N.D. Tex. Nov. 8, 2005)...........................................................................16

*Torres v. S.G.E. Mgmt., L.L.C.*,
   838 F.3d 629 (5th Cir. 2016) ....................................................................23

4883-5467-8298.v1

Page

*United States v. Tex. Educ. Agency*,
   679 F.2d 1104 (5th Cir. 1982) ..................................................................14

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970),
   *aff'd*, 440 F.2d 1079 (2d Cir. 1971) .........................................................13

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)...................................................................................7

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) ..................................................................19

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78j(b)...............................................................................................2, 3, 11
   §78t...................................................................................................2, 3, 11

Federal Rules of Civil Procedure
   Rule 11 ........................................................................................................6
   Rule 23 ...........................................................................................2, 18, 24
   Rule 23(a)..............................................................................................18, 19
   Rule 23(a)(1)...............................................................................................19
   Rule 23(a)(2)...............................................................................................19
   Rule 23(a)(3)...............................................................................................20
   Rule 23(a)(4)...............................................................................................20
   Rule 23(b)(3).................................................................................18, 19, 23
   Rule 23(c)....................................................................................................23
   Rule 23(c)(1)...............................................................................................18
   Rule 23(c)(1)(C)..........................................................................................12
   Rule 23(c)(2)(B)..........................................................................................15
   Rule 23(e)...............................................................................................2, 19
   Rule 23(e)(1)(B)......................................................................................8, 18
   Rule 23(e)(1)..................................................................................................8
   Rule 23(e)(2).............................................................................8, 9, 14, 18
   Rule 23(e)(2)(A)............................................................................................9
   Rule 23(e)(2)(B)..........................................................................................10
   Rule 23(e)(2)(C)(i).......................................................................................10
   Rule 23(e)(2)(C)(ii)......................................................................................14
   Rule 23(e)(2)(C)(iii).....................................................................................16
   Rule 23(e)(2)(C)(iv).....................................................................................17
   Rule 23(e)(2)(D)..........................................................................................17
   Rule 23(e)(3)..................................................................................................8

17 C.F.R.
   §240.10b-5...................................................................................................22

Lead Plaintiffs Wayne County Employees' Retirement System, the Town of Fairfield Employees' Retirement Plan, and the Town of Fairfield Police and Firemen's Retirement Plan respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the proposed Settlement of this Action, as set forth in the Stipulation of Settlement dated March 25, 2022 (the "Stipulation"),[1] and for approval of the forms and manner of providing notice of the Settlement to the Settlement Class.

## I.    INTRODUCTION

As detailed in the Stipulation, the Settlement provides a cash recovery of $33 million to resolve this securities fraud class action against Defendants Fluor Corporation, David T. Seaton, Biggs C. Porter, Bruce A. Stanski, Matthew McSorley, Gary G. Smalley, Carlos M. Hernandez, D. Michael Steuert, and Robin K. Chopra.   With the approval of Lead Plaintiffs, after full consideration of the strengths and weaknesses of the parties' respective claims and defenses, including the recovery risks and likelihood of success, Lead Counsel, who have extensive experience in securities class actions, negotiated the Settlement following extensive arm's length mediation overseen by an experienced mediator, Gregory Lindstrom of Phillips ADR Enterprises. With the benefit of substantial briefing, two motion to dismiss Orders, detailed written mediation papers, and an exhaustive discussion of the strengths and weaknesses of their respective positions, an agreement in principle was accepted by all Parties on February 23, 2022.

Lead Plaintiffs and Lead Counsel approve of the Settlement.   Lead Plaintiffs are sophisticated investors, with millions of dollars of assets under management and experience in securities fraud litigation.   Lead Counsel have substantial securities litigation experience, have

---

[1]     All capitalized terms not otherwise defined herein have the same meanings as assigned in the Stipulation.  *See* Appendix in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Notice to the Settlement Class.  Citations are omitted and emphasis is added throughout unless otherwise noted.

litigated hundreds of cases to resolution, and are recognized as leading experts in the field.  Lead Plaintiffs retained these attorneys specifically because of their expertise and acumen in complex securities matters like this one.  Lead Plaintiffs and Lead Counsel understood that there were serious risks in continued litigation, and while Lead Plaintiffs believe strongly in the merits of their case, they recognize that Defendants do as well.  At trial, Lead Plaintiffs would have had the burden of proving each element of their claims.  Trial would have been lengthy and very expensive, and either party could have prevailed.  Inevitable post-trial appeals would have added to the length, expense, and uncertainty of this proceeding.

At the preliminary approval stage of a class action settlement under Fed. R. Civ. P. 23, the Court is asked to: (i) evaluate its terms under Rule 23(e) and the Fifth Circuit's standards; and (ii) certify a settlement class for settlement purposes.  As set forth below, the proposed Settlement easily satisfies the applicable standards.  The Settlement is an excellent result for the Settlement Class under the circumstances, providing for an all-cash payment of $33 million.  If the Court grants preliminary approval, notice will be given to Settlement Class Members, informing them of, among other things, their right to object to or opt out of the Settlement and the deadlines for doing so, the claims submission procedure and deadline, and of a final Settlement Fairness Hearing.  Lead Plaintiffs respectfully request the Court take this first step in the process and grant preliminary approval of the proposed Settlement and certify the proposed Settlement Class.

## II.    SUMMARY OF THE LITIGATION

On May 25, 2018, Kin-Yip Chun filed a securities class action complaint (ECF 1) in the Court styled *Chun v. Fluor Corp.*, No. 3:18-cv-01338 (N.D. Tex.) against Fluor, Seaton, Porter, and Stanski asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act").  By Order dated December 10, 2018 (ECF 41), the Court appointed Lead Plaintiffs

- 2 -

and their choice of Robbins Geller Rudman & Dowd LLP and Pomerantz LLP as Lead Counsel and Kendall Law Group, PLLC and the Briscoe Law Firm as Local Counsel.

On March 8, 2019, Lead Plaintiffs filed the Consolidated Complaint for Violation of the Federal Securities Laws (ECF 47) ("CC"), alleging that Defendants Fluor, Seaton, Porter, Stanski, McSorley, and Smalley made material misstatements and omissions, in violation of §§10(b) and 20(a) of the 1934 Act, between August 14, 2013 and October 10, 2018, inclusive.

On July 15, 2019, Defendants filed their motion to dismiss (ECF 72).  Lead Plaintiffs opposed the motion on September 27, 2019 (ECF 86).  Defendants filed their reply on November 22, 2019 (ECF 87).  On March 5, 2020, the Court entered an Order (ECF 89) granting the motion in part and dismissing the CC without prejudice.

On April 2, 2020, Lead Plaintiffs filed the First Amended Consolidated Complaint for Violation of the Federal Securities Laws  (ECF 90) ("FAC"), asserting claims under §§10(b) and 20(a) of the 1934 Act, alleging that Defendants Fluor, Seaton, Porter, Stanski, McSorley, Smalley, Hernandez, Steuert, and Chopra made material misstatements and omitted material information between August 14, 2013 and February 14, 2020, inclusive (the "Settlement Class Period").

On April 6, 2020, Lead Plaintiffs filed a motion (ECF 92) to consolidate a related later-filed case (the "Related Action").  On April 7, 2020, the Related Action plaintiff filed a motion to intervene (ECF 95), seeking to strike the FAC and require republication of the PSLRA notice in this Action.  Between April 24, 2020 and May 8, 2020, both motions were fully briefed (ECF 102, 105, 107, 109).[2]  On May 26, 2020, the Court entered an Order (ECF 110) granting Lead Plaintiffs' motion to consolidate and denying the Related Action plaintiff's motion to intervene.

---

[2]     Lead Plaintiffs also pursued lead plaintiff briefing in the Related Action, once its PSLRA lead plaintiff motion deadline arose, until the Court consolidated it into this Action.

On July 1, 2020, Defendants moved to dismiss the FAC (ECF 112).  On October 29, 2020, after Fluor restated years of financial statements in September 2020, Lead Plaintiffs opposed the motion to dismiss (ECF 126) and, given Fluor's restatement, also filed a motion to supplement or amend the FAC (ECF 130) and to seek judicial notice of the restatement (ECF 129).  On December 14, 2020, Defendants filed their motion to dismiss reply (ECF 133) and opposed the motion to supplement or amend (ECF 136) and motion for judicial notice (ECF 135).  On January 8, 2021, Lead Plaintiffs filed a reply to their motion to supplement (ECF 137).

On May 5, 2021, the Court entered an Order (ECF 140) denying Lead Plaintiffs' request for judicial notice and motion to supplement or amend and granting, in large part, Defendants' motion to dismiss the FAC, dismissing the claims as regards to 63 of the alleged misrepresentations.  Defendants answered the FAC on May 19, 2021 (ECF 141).

Lead Plaintiffs prepared a motion for reconsideration of the Court's ruling and were prepared to file it within 30 days of the Court's Order.

However, on June 1, 2021, the Parties notified the Court of their intent to mediate and sought a stay of litigation deadlines (ECF 143).  The Court entered a docket Order granting the litigation stay and asking for periodic updates (ECF 144).

On September 30, 2021, counsel for Lead Plaintiffs and Defendants, along with certain insurance carriers, participated in a full-day mediation before Gregory Lindstrom of Phillips ADR Enterprises.  In advance of that session, the Parties exchanged and provided to the mediator detailed confidential mediation statements addressing liability and damages.  No settlement was reached at the mediation.  Thereafter, the Parties filed four status reports updating the Court on their continued efforts to reach a resolution (ECF 147, 148, 149, 150).

On December 7, 2021, Lead Plaintiffs filed a motion to lift the litigation stay (ECF 151), so that they could file their motion for reconsideration and revive their active pursuit of the

- 4 -

litigation.  Defendants opposed the motion (ECF 152), on the grounds that the mediation and negotiation process remained ongoing, and Lead Plaintiffs filed their reply (ECF 153).

On February 25, 2022, the Parties filed a joint motion notifying the Court that a settlement agreement had been reached in principal and seeking to extend the litigation stay (ECF 155).  On March 25, 2022, following further negotiations, the Parties executed the Stipulation.

## III.    THE SETTLEMENT TERMS

This Settlement requires Fluor to pay or cause to be paid $33 million into the Escrow Account within 30 calendar days of entry of the Court's preliminary approval order.  This amount, plus all accrued interest, comprises the Settlement Fund.  Stipulation, ¶2.0.

Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund.  Stipulation, ¶2.7.  Lead Plaintiffs have retained a nationally recognized class action settlement administrator, JND Legal Administration, subject to the Court's approval.  The proposed notice plan and plan for claims processing is discussed below in §VI.

When moving for final approval, Lead Counsel will also submit an application for: (a) an award of attorneys' fees not to exceed 30% of the Settlement Amount; (b) payment of expenses incurred in prosecuting the Action not to exceed $200,000.00; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  Stipulation §II.H.; Stipulation, Ex. B1 at 2, 10.  Lead Plaintiffs intend to seek an amount not to exceed $75,000.00 in the aggregate, pursuant to the PSLRA, in connection with their representation of the Settlement Class.  Any such amounts the Court awards shall be paid from the Settlement Fund.  *Id.*

Once Notice and Administration Costs, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses, and any award to the Lead Plaintiffs pursuant to the PSLRA have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be

- 5 -

distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10. Any amount remaining following the distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their Fluor common stock purchases, acquisitions, and sales. Stipulation, ¶1.20; Stipulation, Ex. B1 at 13-23.

Lead Plaintiffs and Defendants have entered into a standard Supplemental Agreement which provides that if prior to the Settlement Hearing, requests for exclusion from the Settlement Class exceed a certain threshold, Defendants may terminate the Settlement. Stipulation, ¶2.13.

The Stipulation sets forth mutual, reciprocal releases, which were the subject of hard-fought, arm's length negotiations. In exchange for the benefits provided under the Settlement, Settlement Class Members will release any and all claims against Defendants relating to or arising from: (i) the purchase or acquisition of Fluor common stock during the Settlement Class Period; and (ii) the allegations, transactions, facts, matters or occurrences, representations or omissions involved or set forth in, or related to the FAC. Stipulation, ¶¶1.26, 5.1. As a material condition of the dismissal with prejudice of the Action, Defendants will release any and all claims against Lead Plaintiffs, all Settlement Class Members, and Plaintiffs' Counsel relating to or arising from the institution, prosecution, or settlement of the claims against them, including, without limitation, for violation of Fed. R. Civ. P. 11. Stipulation, ¶¶1.25, 5.2. Claims related to the enforcement of the Stipulation are exempted from these reciprocal releases.

Any Settlement Class Member who wishes to object to the Settlement's fairness must, by no later than twenty-one (21) days prior to the Settlement Fairness Hearing, file an objection with the Court and mail copies thereof to the Court, Lead Counsel, and Defendants' counsel. Stipulation, Ex. A at ¶18. Any Settlement Class Member who does not timely do so shall be foreclosed, unless otherwise ordered by the Court, from making any objection to the Settlement's

4883-5467-8298.v1

fairness, reasonableness, or adequacy; to the Stipulation; to the Plan of Allocation; to the Fee and Expense Award; or to Lead Plaintiffs' compensatory awards. *Id.*, ¶20.

Any Settlement Class Member who wishes to be excluded as a Settlement Class Member may submit a written Request for Exclusion to the Claims Administrator, to be received no later than twenty-one (21) days prior to the Settlement Fairness Hearing. *Id.*, ¶17.

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The Settlement requires payment of $33 million in cash for the benefit of the Settlement Class, which Lead Plaintiffs and Lead Counsel respectfully submit is a good result under the circumstances, clearly within the range of reasonableness, thus warranting preliminary approval.

### A.   The Public Interest Favors the Settlement of Complex, Class Actions

For well over a century, courts across the country have pronounced a preference for settlement compromises of disputed claims. *See, e.g.*, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). The Fifth Circuit is no different, proclaiming that settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977); *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975).

Settlements of class actions and shareholder litigation are "particularly favored" and are not to be lightly rejected. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). The Fifth Circuit has recognized that class actions have a "well deserved reputation as being most complex," which compels an "overriding public interest in favor of settlement." *Cotton*, 559 F.2d at 1331. Thus, in determining whether to approve a settlement, the trial judge may adopt the parties' and their counsel's assessment of the merits of the case, rather than making an independent decision of the merits. *Maher*, 714 F.2d at 455. The experience and acumen of Lead Counsel lends further weight to this proposition.

When examined under applicable criteria, the Settlement is a good result for the Settlement Class, particularly since it avoids the risk, delay, and expense of a trial. Lead Counsel believe there is a significant risk that there would not have been a more favorable result for the Settlement Class after trial and the likely post-trial motions and appeals. The Settlement achieves a certain and substantial recovery for Settlement Class Members now and avoids the risk that there would be no recovery at all if the Action continued years into the future.

### B.     The Applicable Criteria for Preliminary Approval

Under Rule 23(e)(1), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which provision governs final approval. Fed. R. Civ. P. 23(e)(1)(B). Thus the Court takes a preliminary look at the final approval standard, which is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To make that determination, the Court must look at the following factors under Rule 23(e)(2):

> (2)    ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Fifth Circuit has adopted a six-pronged test, which includes certain factors that overlap with the Rule 23(e)(2) factors, to be applied to the approval of class settlements:

1.   the assurance that there is no fraud or collusion behind the settlement;

2.   the stage of the proceedings and the amount of discovery completed;

3.   the probability of plaintiff's success on the merits;

4.   the range of possible recovery;

5.   the complexity, expense, and likely duration of the litigation; and

6.   the opinions of class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986) (considering these factors in affirming district court order approving a class action consent decree).

The Settlement satisfies each factor established by Rule 23(e)(2) and the Fifth Circuit.

### 1.   Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Lead Plaintiffs and Lead Counsel adequately represented the Settlement Class, intelligently assessing the strengths and weaknesses of their case and thereby satisfying both Rule 23(e)(2)(A) and second Fifth Circuit factor (the stage of the proceeding / amount of discovery).  Lead Counsel conducted a thorough investigation of the facts both before and during the course of the Action, reviewing and analyzing voluminous publicly available documents regarding Fluor, including Fluor's public filings, and identifying, locating and speaking with former Fluor employees who provided more details into the alleged wrongdoing.  This investigation allowed Lead Counsel to better understand key factual issues at the core of the Action in negotiating the Settlement, *i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  Lead Plaintiffs and Lead Counsel also had the

- 9 -

benefit of seeing Defendants' merits arguments in extensive dispositive motion papers, as resolved by two Orders of the Court, seeing Defendants' positions on liability and damages in their mediation statement, and benefitting from the neutral perspective of an experienced mediator. Lead Plaintiffs and Lead Counsel thus settled this Action on a favorable basis to the Settlement Class, without unduly prolonging it and without incurring the expense and risk of trial.

### 2.      The Arm's Length Settlement Lacked Any Fraud or Collusion

There is no collusion in the Settlement, satisfying Rule 23(e)(2)(B) and the first Fifth Circuit factor.  The Parties reached this Settlement only after a lengthy process, with regular status updates to the Court, that involved formal mediation and several months of negotiations through an experienced mediator.   In addition, Lead Counsel have decades of experience litigating securities class actions and have negotiated scores of other class settlements which have been approved by courts throughout the country.  Lead Counsel enjoy well-deserved reputations for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters.  *See* www.rgrdlaw.com; www.pomlaw.com.  Likewise, Defendants at all times were represented by attorneys with reputations for tenacious defense of class actions and other complex matters.  The Settlement was negotiated by senior lawyers for Lead Plaintiffs and the Defendants, assisted by Gregory Lindstrom of Phillips ADR Enterprises.  The Settlement Class was fairly and adequately represented and the Settlement was not collusive.

### 3.      The Settlement Relief Is Sufficient Given the Costs, Risks, and Delays of Further Litigation

Rule 23(e)(2)(C)(i) asks whether the Settlement relief is adequate, taking into account the costs, risks, and delay of trial and appeal.  The Fifth Circuit's third and fifth factors similarly look at the probability of success on the merits and the complexity, expense, and likely duration of the litigation.  *Reed*, 703 F.2d at 172.  The proposed Settlement satisfies these factors as well.

- 10 -

As in every complex case, Lead Plaintiffs and Lead Counsel faced formidable obstacles to recovery at trial, both regarding liability and damages. The principal claims are based on §§10(b) and 20(a) of the 1934 Act. Lead Plaintiffs allege that Defendants made material misrepresentations and omissions concerning Fluor's fixed-price bids on and accounting for massive construction projects, problems and delays at those projects, and the quality of Fluor's internal controls. Lead Plaintiffs allege that when Fluor announced more than $1.4 billion in charges for troubled fixed-price projects, the price of Fluor's stock fell, injuring Lead Plaintiffs and the Settlement Class.

### a.   Risks in Proving Liability and Damages and in Certifying the Class

Lead Plaintiffs and Lead Counsel believe that the FAC's allegations would ultimately be supported by the evidence. Nevertheless, they recognize that they faced significant hurdles to proving liability at trial. After two motions to dismiss, the Court upheld only one of 64 alleged misrepresentations (from Fluor's 2014 annual report). There is no guarantee that the Fifth Circuit would reverse the dismissal of any of the other 63 that were dismissed. Defendants argued that they made no actionably false or misleading misstatement and that they did not possess the requisite scienter required for a 1934 Act claim. Defendants asserted formidable defenses to the remaining misstatement, which they would have pursued through to trial, and maintained that discovery would show that it was actually true and believed by Defendants to be true when it was made. Defendants also claimed that they were not the "makers" of the alleged misstatement, that it had no price impact when it was made, and that it was never corrected and thus could not have caused any loss. Defendants would have retained highly qualified experts to testify about pertinent complex issues, *e.g.*, the lack of price impact or the risks of fixed-price projects more broadly.

Thus, even if Lead Plaintiffs established liability at trial, they faced substantial risks in proving loss causation and damages, which would have involved an inherently unpredictable, costly, and hotly disputed "battle of the experts." Accordingly, in the absence of the Settlement,

- 11 -

there was a very real risk that the Settlement Class would have recovered an amount significantly less than the Settlement Amount – or even nothing at all.  Thus, the payment of $33 million, when viewed in the context of the significant risks and uncertainties involved in proving liability, damages, and loss causation, weighs strongly in favor of approving the Settlement.

Moreover, even if the Court granted Lead Plaintiffs' future class certification motion, Defendants would likely have sought an interlocutory appeal or moved to decertify the class prior to trial.  Class certification may be reviewed at any stage of the litigation prior to entry of final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C); *McNamara v. Felderhof*, 410 F.3d 277, 280 n.8 (5th Cir. 2005) (noting a district court can reconsider or modify its class certification order).

In sum, Lead Plaintiffs and Lead Counsel were clear-eyed in recognizing that, had the case proceeded to trial, it may have been difficult to recover all or even most of the damages claimed.  Therefore, Lead Plaintiffs and their counsel believe that the Settlement for $33 million in cash represents an excellent result for the Settlement Class under the circumstances.

### b.      The Action's Complexity, Expense, and Likely Duration

Another reason for counsel to recommend, and courts to approve, a proposed settlement is the complexity, expense, and likely duration of further litigation (Fifth Circuit factor five).  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider, *inter alia*, "the complexity, expense, and likely duration of such litigation"); *Manchaca*, 927 F. Supp. at 966.  Here, several factors are present which make it more likely that, without the Settlement, this case would have required additional large expenditures of time and money with a significant risk that the Settlement Class would obtain a result far less beneficial than the one provided by the Settlement.  The factors include the following:

- Defendants are and have been at all times represented by capable counsel who are well versed in the defense of complex securities class actions such as the Action.

- Lead Plaintiffs would face months, if not years, of time- and resource-consuming fact and expert discovery, under the difficult circumstance where many of the principal actors are no longer associated with Fluor.  Collecting both documentary and testimonial evidence from them would have required additional efforts beyond those (already substantial) efforts typically expended in securities actions. After a lengthy discovery period, which would have included extensive witness depositions and review of significant amounts of documents, the parties would have engaged in extensive expert discovery, motions for summary judgment, trial, and appeals. All of these efforts would be time consuming and resource intensive.

- A trial of the Action would unquestionably require months of effort and expenditure of substantial additional expenses and would involve the introduction of hundreds of exhibits and testimony by dozens of fact witnesses on complicated matters regarding the Brunswick project, vigorously contested evidentiary motions, and conflicting expert testimony, the outcome of which is by no means certain.

- Even if the Settlement Class recovered a judgment after trial that was larger than the amount of the Settlement, given the time value of money, such future recovery (if any) might not be more beneficial than receiving the benefits of the proposed Settlement now.  Moreover, any judgment after trial would still be subject to the continuing risks of litigation through likely appeals.  Even very large judgments, recovered after lengthy litigation and trial, can be lost on appeal.[3]

Given the significant risks inherent in this litigation and the fact that the Court dismissed a large portion of Lead Plaintiffs' case, the result achieved for the Settlement Class is exceptional and warrants the Court's preliminary approval of the Settlement.  Indeed, the Fifth Circuit has recognized that securities class actions are among the riskiest litigations from the plaintiffs' perspective, explaining that "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

---

[3]      As the court noted in *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971), "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court.  The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement." *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd and remanded on other grounds*, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010).

**4.      The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery**

Given the possibility that continued litigation may have resulted in the further winnowing of the case and a recovery of less than the proposed Settlement Amount or no recovery at all for investors, the Settlement's $33 million payment is significant.  Defendants asserted loss causation arguments that had the potential to drastically reduce investors' recoverable damages in what remained of this case.  As such, the $33 million recovery achieved by Lead Plaintiffs and Lead Counsel represents a good result for the Settlement Class under the circumstances.

**5.      The Opinion of Lead Counsel**

A strong initial presumption that the settlement is fair and reasonable is created where, as here, experienced counsel negotiated it at arm's length, with the assistance of a mediator.  *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed*, 703 F.2d at 175.  If experienced counsel determine that a settlement is in the class's best interest, "the attorney's views must be accorded great weight."  *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

Lead Counsel acquired a thorough understanding of this Action through their independent investigation, extensive pre-settlement litigation, and the extended mediation and negotiation process, and submit that the Settlement is appropriate and should be approved.  The view of Lead Counsel, while not conclusive, is "entitled to significant weight."  *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985).

**6.      The Settlement Satisfies the Remaining Rule 23(e)(2) Factors**

**a.      The Proposed Distribution Method Is Effective**

The method and effectiveness of the proposed notice and claims administration program satisfy Rule 23(e)(2)(C)(ii).  The notice plan includes direct mail notice, substantially in the form

of Stipulation Ex. B1 or B2 (as the Court may order), to all those who can be reasonably identified, supplemented by the publication of the Summary Notice, substantially in the form of Stipulation Ex. C, over a newswire service that distributes nationally in the United States.  The Notice describes in plain English the Settlement's key terms.

For the mailing, Lead Plaintiffs and Lead Counsel have given the Court a choice between a traditional long-form notice (Ex. B1), which is longer, denser, and far more costly to mail, or a postcard short-form notice (Ex. B2), which is more streamlined, far cheaper to mail, and directs recipients to a settlement-specific website where they access key documents, including the Stipulation, the full long-form notice, the Proof of Claim and Release, and the Preliminary Approval Order.  Stipulation, ¶¶1.15, 4.0-4.1.  The more streamlined notice is in line with recent amendments to the Federal Rules of Civil Procedure (*see, e.g.*, Fed. R. Civ. P. 23(c)(2)(B)), has been authorized by numerous other federal courts, and fully satisfies due process requirements.

The claims process is also effective and includes a standard claim form (Stipulation, Ex. D), which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation that will govern how Settlement Class Members' claims are calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared by Lead Plaintiffs' damages consultant, with input and oversight of Lead Counsel, and is based on an analysis estimating the amount of artificial inflation in the prices of Fluor common stock at various times during the Settlement Class Period, and the timing of a Settlement Class Member's transactions in Fluor common stock.  The Plan of Allocation affords greater weight to damaged shares purchased during the portion of the Settlement Class Period upheld by the Court's motion to dismiss Orders and lesser weight (but not zero weight) to damaged shares purchased during the rest of the Settlement Class Period before and after the upheld segment.  A thorough

- 15 -

claim review process, including how deficiencies are addressed, is also explained in the Stipulation. Stipulation, ¶¶6.4-6.7.

### b.    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses the proposed award of attorney's fees. As discussed above (at §III) and as disclosed by the notice program, Lead Counsel intend to seek an award of attorneys' fees not to exceed thirty percent (30%) of the Settlement Amount and expenses in an amount not to exceed $200,000.00, plus interest on both amounts. This request is in line with other settlements approved in the Fifth Circuit in similar securities class actions. "Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the-recovery method." *Schwartz v. TXU Inc.*, No. 3:02-cv-2243-K, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005). A review of attorneys' fees awarded in similar cases in this Circuit supports the reasonableness of the 30% request. *See Deka Investment GMBH v. Santander Consumer USA Holdings Inc.*, No. 3:15-cv-02129-K, 2021 WL 118288, at *1 (N.D. Tex. Jan. 12, 2021) (awarding 30% of $47 million, plus expenses); *In re EZCorp, Inc. Sec. Litig.*, No. 1:15-cv-00608-SS, 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) (awarding 33%); *Parmelee v. Santander Consumer USA Holdings Inc.*, No. 3:16-cv-00783-K, 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (awarding 33.33%); *Marcus v. J.C. Penny Co., Inc.*, No. 6:13-cv-00736-RWS-KNM, 2018 WL 11275437, at *1 (E.D. Tex. Jan. 5, 2018) (awarding 30%). Lead Counsel will request that any award of fees and expenses be paid upon entry of the order awarding such fees and expenses. *See, e.g.*, *In re Willbros Group, Inc. Sec. Litig.*, 407 F. Supp. 3d 689, 690 (S. D. Tex. 2018).

Further, as disclosed by the notice program, Lead Plaintiffs intend to request an amount not to exceed $75,000.00 in the aggregate pursuant to the PSLRA, in connection with their representation of the Settlement Class. As sophisticated institutional investors, Lead Plaintiffs

have devoted time and resources to the oversight of this litigation over multiple years, which involved monitoring and directing the efforts of Lead Counsel and authorizing the Settlement.

### c. There Is Only a Standard Supplemental Agreement

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement between the parties. The Parties have entered into a standard Supplemental Agreement, which provides that if the total opt outs from the Settlement Class exceed an agreed-upon threshold, Defendants shall have the option (but not the obligation) to terminate the Settlement. Stipulation, ¶2.13.[4]

### d. Settlement Class Members Are Treated Equitably

The final factor under Rule 23(e)(2)(D) looks at whether Settlement Class Members are treated equitably. As reflected in the Plan of Allocation (Stipulation, Ex. B1 at 13-23), the Settlement treats Settlement Class Members equitably relative to each other, based on the timing of their Fluor common stock purchases or acquisitions and their sales, and by providing that Authorized Claimants receive *pro rata* shares of the Net Settlement Fund based on recognized losses calculated under the Plan of Allocation. All damaged shares purchased or acquired during the portion of the Settlement Class Period that the Court upheld are treated identically, with greater weighting reflecting the fact that the correlating claim survived a motion to dismiss and was in discovery. All damaged shares purchased or acquired during the portions of the Settlement Class Period before or after the upheld claim are treated identically, with lesser weighting reflecting the more challenging posture flowing from the Court's dismissal Orders and the need to seek to revive the correlating claim on appeal. Authorized Claimants can have damaged shares in one or both

---

[4] There are "compelling reasons" for keeping the Supplemental Agreement confidential. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Keeping confidential the threshold number of exclusions that gives Defendants the option to terminate the Settlement is necessary to avoid enabling one or more stockholders to selfishly use this knowledge to insist on a higher payout for themselves while threatening to eviscerate the Settlement, which would be detrimental to the interests of the Settlement Class.

categories, which once calculated and totaled, will result in a *pro rata* payment from the Net Settlement Fund.

*     *     *

Each approval factor identified under Rule 23(e)(2) and by the Fifth Circuit is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the $33 million recovery is an outstanding one that could not have been achieved without full commitment by Lead Plaintiffs and Lead counsel, who respectfully submit that the Settlement is fair and adequate and meets all relevant factors, such that notice should be sent to the Settlement Class.

## V.     THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS TO PERMIT DISSEMINATION OF THE NOTICE

The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal" before granting final approval to a proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  One ground for a decision to give notice is a "showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal." *Id.*  To provide notice to a proposed class, the Fifth Circuit has expressed approval of the practice of  "establish[ing] a pre-certification settlement class."  *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979) (noting that a "'tentative class would appear to be a form of conditional certification sanctioned by Rule 23(c)(1)'").  Notably, the Fifth Circuit has explained that "it is altogether proper and consistent for a court to certify a class for settlement purposes, while it might have had more difficulty reaching this determination in a different context." *Id.* at 178.  Here, the Court should decide for "purposes of issuance of notice" that "the settlement class is preliminarily certifiable." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002).

### A.     Rules 23(a) and 23(b)(3) Factors Are Satisfied

"'The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial

- 18 -

efficiencies.'" *Beef Indus.*, 607 F.2d at 177.  Indeed, "[t]hrough the procedural mechanism of a

class settlement, defendants 'are entitled to settle claims pending against them on a class-wide

basis even if a court believes that those claims may be meritless, provided that the class is properly

certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e).'" *In re Deepwater

Horizon*, 739 F.3d 790, 807 (5th Cir. 2014).  As detailed below, the requirements of Rules 23(a)

and 23(b)(3) are satisfied, such that the Settlement Class may be certified for settlement purposes.

### 1.    The Settlement Class Has Numerosity

The Fifth Circuit has held that "the prerequisite expressed in Rule 23(a)(1) is generally

assumed to have been met in class action suits involving nationally traded securities." *Zeidman v.

J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981).  Evidence of numerosity in a

securities case can consist of "the number of shares traded" during the relevant period.  *Id.*

Here, Lead Plaintiffs allege that hundreds of millions of shares of Fluor common stock

were outstanding at the time the relevant conduct occurred.  *See* FAC, ¶307.  This figure "relie[s]

on a common-sense assumption" – and "indeed a reasonable one" – that "any class composed of

the sellers of a nationally traded security during a period in which hundreds of thousands or even

millions of shares of the security were traded must necessarily be 'so numerous that joinder of all

members is impracticable.'" *Zeidman*, 651 F.2d at 1039; *In re OCA, Inc.*, No. 05-2165, 2008 U.S.

Dist. LEXIS 84869, at *26 (E.D. La. Oct. 17, 2008) (50 million actively trades shares supports

inference of numerosity).  Numerosity is thus satisfied for purposes of this proposed Settlement.

### 2.    There Are Common Questions of Law or Fact

"To satisfy the commonality requirement under Rule 23(a)(2), class members must raise

at least one contention that is central to the validity of each class member's claims." *Deepwater

Horizon*, 739 F.3d at 810.  The common questions here include whether the 1934 Act was violated

by Defendants' acts as alleged in the FAC, to what extent the members of the Settlement Class

- 19 -

have sustained damages, and the proper measure of damages. Thus, the "legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct." *Id.* Commonality is thus satisfied for purposes of this proposed Settlement.

### 3.    Lead Plaintiffs' Claims Are Typical

Typicality under Rule 23(a)(3) requires that the class representatives' claims "'have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). As with commonality, "'the test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Id.* "'Typicality does not require a complete identity of claims.'" *Id.*; *accord Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999).

Here, the same facts establishing commonality establish typicality. Lead Plaintiffs purchased Fluor stock when its public trading price was allegedly inflated by misrepresentations and omissions that also caused absent Settlement Class Members to pay higher prices for the stock, and Lead Plaintiffs allegedly suffered damages as a result of the same corrective events that allegedly caused absent Settlement Class Members' damages. Thus, typicality is established. *E.g.*, *Oscar Private Equity Invs. v. Holland*, No. 3:03-CV-2761-H, 2005 U.S. Dist. LEXIS 6525, at *21 (N.D. Tex. Apr. 15, 2005), *vacated and remanded on other grounds sub nom. Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007) (typicality satisfied when lead plaintiff's claims arose from the same alleged misrepresentations as the rest of the class).

### 4.    Lead Plaintiffs Have Fairly and Adequately Protected the Settlement Class's Interests

Rule 23(a)(4)'s adequacy prong requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy,

courts in the Fifth Circuit utilize a three-prong test, wherein proposed class representatives must show that: (1) there are no conflicts of interest between them and the proposed class; (2) they have the willingness and ability to play an active role in the litigation and vigorously represent the class, while protecting the interests of absentee class members; and (3) class counsel has the competence and ability to vigorously conduct the litigation. *Buettgen v. Harless*, No. 3:09-CV-791-K, 2011 U.S. Dist. LEXIS 53888, at *13 (N.D. Tex. May 19, 2011).

The crux of the inquiry regarding the adequacy of proposed class representatives is whether they are "'part of the class and possess the same interest and suffer the same injury as the class members'" and whether they have any interests that are antagonistic to the rest of the class. *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977)). The test is easily satisfied. Each of the Lead Plaintiffs purchased Fluor common stock when the price was allegedly inflated and each incurred legal damages as a result of the same stock price declines that allegedly injured absent Settlement Class Members. Also, no Lead Plaintiff has any interest that is in conflict with the interests of absent Settlement Class Members. Like all absent Settlement Class Members, each of the Lead Plaintiffs has a strong interest in proving that the alleged statements were materially false or misleading, were made with scienter, and caused damages to Settlement Class Members.

Each of the Lead Plaintiffs has maintained an active role in this litigation, including by seeking appointment as Lead Plaintiffs, reviewing drafts of pleadings and key motions, and regularly communicating with counsel regarding the status of and developments in this case. Further, Lead Plaintiffs were kept apprised before the mediation and during the extended negotiation of this Settlement, and ultimately concluded that it was fair and appropriate after due consideration and an opportunity to formally approve. This level of involvement in the prosecution and settlement of the claims highlights their adequacy as lead plaintiffs. *See, e.g.*, *Buettgen*, 2011

- 21 -

U.S. Dist. LEXIS 53888, at *14 (finding adequacy where movant "has been kept informed of the progress of this lawsuit, [and] has moved this Court to appoint it lead plaintiff").

Lead Plaintiffs retained attorneys who are qualified, experienced, and able to vigorously conduct the litigation. *Buettgen*, 2011 U.S. Dist. LEXIS 53888, at *13. Lead Counsel all have extensive experience litigating complex securities fraud class actions on behalf of injured investors throughout the country. *See, e.g.*, *Marcus v. J.C. Penney Co.*, No. 6:13-cv-736-MHS-KNM, 2016 U.S. Dist. LEXIS 115795, at *35-*36 (E.D. Tex. Aug. 29, 2016) ("Robbins Geller has served as class counsel in many securities class action cases and the Fund has submitted the firm's resume detailing notable successful cases."); *Prause v. TechnipFMC, PLC*, No. 4:17-cv-2368, 2020 WL 3549686, at *4 (S.D. Tex. Mar. 9, 2020) ("Proposed class counsel, Pomerantz, has served as lead counsel in other large securities class actions" and "Federal courts also have 'acknowledged the firm's ability to vigorously pursue and successfully litigate actions on behalf of investors.'").

For the foregoing reasons, adequacy is satisfied for purposes of the proposed Settlement.

> **5. Common Questions of Law or Fact Predominate and a Class Action Is Superior for Adjudicating the Controversy**

The Supreme Court has recognized that predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). Notably, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620.

Here, as in *Deepwater Horizon*, predominance is based "on the numerous common issues of liability." 739 F.3d at 815. *See Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010) ("When a company's stock trades in a large and efficient market, the contestable elements of the Rule 10b-5 claim reduce to falsehood, scienter, materiality, and loss. Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine,

- 22 -

if a suitable representative steps forward."). This is so because the core elements of the claim – falsity, materiality, scienter, reliance, loss causation, and damages – all present issues susceptible to common proof. *See, e.g.*, *Basic v. Levinson*, 485 U.S. 224, 241 (1988) (reliance); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468-69 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) (loss causation); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015) (damages). Any potentially individualized issues will not predominate over common ones. Therefore, pursuant to Rule 23(b)(3), the proposed Settlement Class are "'sufficiently cohesive to warrant adjudication'" and predominance is established. *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016).

Finally, superiority is likewise satisfied. Indeed, "because of the common issues in this case, resolution in a single forum would be beneficial to the class and would promote judicial economy." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, MDL No. 1643, 2006 U.S. Dist. LEXIS 9726, at *19 (E.D. La. Mar. 13, 2006).

Predominance and superiority are satisfied for purposes of the proposed Settlement.

## VI.   NOTICE TO THE SETTLEMENT CLASS IS APPROPRIATE

Guided by recent Rule 23(c) amendments, which permit more cost-efficient notice including "electronic means, or other appropriate means," Lead Plaintiffs have given the Court the option of approving distribution by First-Class mail of either the full long-form notice (Stipulation, Ex. B1) or a shorter, far more cost-effective postcard version (Stipulation, Ex. B2) to each Settlement Class Member who reasonably can be identified and to each nominee who was a security holder of record for Settlement Class Members who purchased or acquired Fluor common stock during the Settlement Class Period. The postcard notice advises Settlement Class Members how to access the Preliminary Approval Order and the Stipulation and its Exhibits, including the long-form notice and the Proof of Claim and Release (Stipulation, Ex. D), on the Settlement

- 23 -

website.  In recent years, Lead Counsel have found that federal courts appreciate being offered these two options, and when presented with them, invariably choose the short-form version.  The Stipulation also provides the Summary Notice (Stipulation, Ex. C) to be published once over a national business newswire.  The notice program details the Settlement's terms and the rights of Settlement Class Members to share in the recovery, to object to the Settlement, or to request exclusion.  It also provides the date, time, and place of the Settlement Fairness Hearing and the right of Settlement Class Members to be heard at the hearing.  Finally, it provides the name, address, and phone number of Lead Counsel's representatives for inquiries.  The form and manner of this notice fulfill all requirements of Fed. R. Civ. P. 23, the PSLRA, and due process.

## VII.    PROPOSED SCHEDULE

In connection with preliminary approval of the Settlement, Lead Plaintiffs respectfully ask the Court to set a final approval hearing date, dates for mailing the Notice (in either form B1 or B2) and publication of the Summary Notice, and deadlines for objecting to the Settlement, submitting requests for exclusion, and filing papers in support of the Settlement.  Lead Plaintiffs respectfully propose the following schedule:

| *EVENT* | *TIME FOR COMPLIANCE* |
| --- | --- |
| Deadline for commencing mailing of the Notice and Claim Form to Settlement Class Members (the "Notice Date") | 21 calendar days after entry of the Preliminary Approval Order |
| Deadline for publication of Summary Notice | 28 calendar days after the entry of the Preliminary Approval Order |
| Deadline for filing initial papers in support of final approval of the Settlement, Plan of Allocation, and application for an award of attorneys' fees and expenses | 21 calendar days prior to the Settlement Fairness Hearing |
| Deadline for submitting objections and requests for exclusion | 21 calendar days prior to the Settlement Fairness Hearing |

| *EVENT* | *TIME FOR COMPLIANCE* |
|---|---|
| Deadline for filing reply in response to any objections and in further support of approval of the Settlement and Plan of Allocation, or in support of application for an award of attorneys' fees and expenses | 7 calendar days prior to the Settlement Fairness Hearing |
| Settlement Fairness Hearing | Approximately 135 calendar days after the Notice Date, at the Court's convenience |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |

## VIII.  CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant the motion for preliminary approval of the proposed Settlement and enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice.

DATED:  March 31, 2022                Respectfully submitted,

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)


*/s/ Joe Kendall*
JOE KENDALL

3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Wayne County Employees'
Retirement System

- 25 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DARRYL J. ALVARADO
KEVIN S. SCIARANI
J. MARCO JANOSKI GRAY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
ksciarani@rgrdlaw.com
mjanoski@rgrdlaw.com

DATED:  March 31, 2022

POMERANTZ LLP
JEREMY A. LIEBERMAN
MATTHEW L. TUCCILLO
J. ALEXANDER HOOD II
JENNIFER BANNER SOBERS

*/s/ Matthew L. Tuccillo*

MATTHEW L. TUCCILLO

600 Third Avenue, 20th Floor
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mltuccillo@pomlaw.com
ahood@pomlaw.com
jsobers@pomlaw.com

POMERANTZ LLP
PATRICK V. DAHLSTROM
Ten South LaSalle Street, Suite 3505
Chicago, IL  60603
Telephone:  312/377-1181
312/377-1184 (fax)
pdahlstrom@pomlaw.com

Lead Counsel for Lead Plaintiffs

- 26 -

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Wayne County Employees'
Retirement System

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE (Texas Bar No. 24001788)
3131 McKinney Avenue, Suite 600
Dallas, TX  75204
Telephone:  214/643-6011
281/254-7789 (fax)
wbriscoe@thebriscoelawfirm.com

Local Counsel for the Town of Fairfield Employees'
Retirement Plan and the Town of Fairfield Police
and Firemen's Retirement Plan

- 27 -

## CERTIFICATE OF CONFERENCE

Counsel for Lead Plaintiffs conferred via e-mail with counsel for Defendants on March 31, 2022.  Counsel for Defendants indicated that they do not oppose the relief requested for settlement purposes only.

*/s/ Darryl J. Alvarado*
DARRYL J. ALVARADO

## CERTIFICATE OF SERVICE

This is to certify that on March 31, 2022, I have filed the above and foregoing on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and exact copies of this filing.

*/s/ Joe Kendall*
JOE KENDALL
