UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| KIN-YIP CHUN, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:18-cv-01338-X |
| | § | CLASS ACTION |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| FLUOR CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT............................................3

III.    PRELIMINARY APPROVAL WAS GRANTED AND NOTICE WAS SENT...............4

IV.     THE SETTLEMENT SHOULD BE FINALLY APPROVED .........................................4

        A.      The Public Interest Favors Settlement of Complex, Class Actions ........................4

        B.      The Standards Governing Approval of Class Action Settlements Are
                Satisfied................................................................................................................5

                1.      Lead Plaintiffs and Lead Counsel Adequately Represented the
                        Settlement Class.......................................................................................6

                2.      The Arm's Length Settlement Lacks Any Fraud or Collusion ...................8

                3.      The Stage of Litigation and Amount of Discovery Support
                        Approval ................................................................................................10

                4.      The Settlement Relief Is Sufficient.........................................................10

                        a.      Liability, Damages, and Class Certification Risks ........................11

                        b.      The Action's Complexity, Expense, and Likely Duration.............12

                5.      The Range of Possible Recovery Supports Approval...............................13

                6.      Opinions of Lead Counsel, Lead Plaintiffs, and Settlement Class
                        Members Support Approval.....................................................................15

                7.      The Settlement Satisfies the Remaining Rule 23(e)(2) Factors................16

                        a.      The Proposed Distribution Method Is Effective ...........................16

                        b.      The Requested Attorneys' Fees Are Reasonable...........................16

                        c.      There Is Only a Standard Supplemental Agreement......................17

                        d.      Settlement Class Members Are Treated Equitably.......................17

        C.      The Settlement Should Receive Final Approval...................................................19

V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED............................................19

        A.      The Settlement Class Satisfies Fed. R. Civ. P. 23(a)............................................19

**Page**

1. The Settlement Class Is Sufficiently Numerous ..........................................19

2. There Are Common Questions of Law or Fact...........................................20

3. Lead Plaintiffs' Claims Are Typical ........................................................20

4. Lead Plaintiffs Fairly and Adequately Protected Class Interests..............21

B. The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3) .........................................22

1. Common Questions of Law or Fact Predominate......................................22

2. A Class Action Is Superior for Adjudicating the Controversy .................22

C. Rule 23 Is Fully Satisfied, So the Settlement Class Should Be Certified..............22

VI. CLASS NOTICE SATISFIED DUE PROCESS................................................................22

VII. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE..........24

VIII. CONCLUSION.....................................................................................................25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ................................................................12

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................22

*Billiteri v. Sec. Am. Inc.*,
    2011 WL 3586217 (N.D. Tex. Aug. 4, 2011).................................20, 21

*Buettgen v. Harless*,
    2011 WL 1938130 (N.D. Tex. May 19, 2011) ..........................7, 21, 22

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ................................................4, 5, 10, 12

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
    431 U.S. 395 (1977)..............................................................................21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ............................. *passim*

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)..............................................................................12

*In re Beef Indus. Antitrust Litig.*,
    607 F.2d 167 (5th Cir. 1979) ................................................................19

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ....................................................19, 20, 22

*In re Deepwater Horizon*,
    785 F.3d 1003 (5th Cir. 2015) ..............................................................21

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    2008 WL 4178151 (S.D. Tex. Sept. 8, 2008) .......................................18

*In re EZCORP, Inc. Sec. Litig.*,
    2019 WL 6649018 (W.D. Tex. Dec. 6, 2019) .......................................16

*In re Forterra Inc. Sec. Litig.*,
    2020 WL 4727071 (N.D. Tex. Aug. 12, 2020).......................................24

*James v. City of Dallas*,
    254 F.3d 551 (5th Cir. 2001) ................................................................20

Page

*Maher v. Zapata Corp.*,
 714 F.2d 436 (5th Cir. 1983) ...................................................................4, 5

*Marcus v. J.C. Penney Co., Inc.*,
 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017)................................................10, 15

*McNamara v. Felderhof*,
 410 F.3d 277 (5th Cir. 2005) ...........................................................................12

*Miller v. Republic Nat'l Life Ins. Co.*,
 559 F.2d 426 (5th Cir. 1977) ..............................................................................4

*Mullen v. Treasure Chest Casino, L.L.C.*,
 186 F.3d 620 (5th Cir. 1999) ............................................................................20

*Newby v. Enron Corp.*,
 394 F.3d 296 (5th Cir. 2004) ..............................................................................5

*Parker v. Anderson*,
 667 F.2d 1204 (5th Cir. 1982) ............................................................................6

*Parmelee v. Santander Consumer USA Holdings Inc.*,
 2019 WL 2352837 (N.D. Tex. June 3, 2019) ..................................................17

*Pearson v. Ecological Sci. Corp.*,
 522 F.2d 171 (5th Cir. 1975) ..............................................................................4

*Pettway v. Am. Cast Iron Pipe Co.*,
 576 F.2d 1157 (5th Cir. 1978) ..........................................................................15

*Reed v. Gen. Motors Corp.*,
 703 F.2d 170 (5th Cir. 1983) .................................................................. *passim*

*Salinas v. Roadway Express, Inc.*,
 802 F.2d 787 (5th Cir. 1986) ..............................................................................6

*Schwartz v. TXU Corp.*,
 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)................................................ *passim*

*Stott v. Capital Fin. Servs., Inc.*,
 277 F.R.D. 316 (N.D. Tex. 2011) .....................................................................13

*Torres v. S.G.E. Mgmt., L.L.C.*,
 838 F.3d 629 (5th Cir. 2016) ............................................................................22

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
 669 F.3d 632 (5th Cir. 2012) ............................................................................10

*United States v. Tex. Educ. Agency*,
 679 F.2d 1104 (5th Cir. 1982) ..........................................................................15

Page

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910) ................................................................................4

*Zeidman v. J. Ray McDermott & Co.*,
  651 F.2d 1030 (5th Cir. 1981) ..........................................................19, 20

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b) ......................................................................................................11
  §78t(a) ......................................................................................................11
  §78u-4(a)(4) ..........................................................................................2, 17
  §78u-4(a)(7) ..............................................................................................23

Federal Rules of Civil Procedure
  Rule 9(b) .....................................................................................................2
  Rule 23 ................................................................................3, 19, 22, 24
  Rule 23(a) .............................................................................................19, 22
  Rule 23(a)(1) .............................................................................................19
  Rule 23(a)(2) .............................................................................................20
  Rule 23(a)(3) .............................................................................................20
  Rule 23(a)(4) ...........................................................................................8, 21
  Rule 23(b)(3) .......................................................................................19, 22
  Rule 23(c)(1)(C) .......................................................................................12
  Rule 23(e) .................................................................................................19
  Rule 23(e)(1) .............................................................................................23
  Rule 23(e)(2) ...................................................................................6, 16, 19
  Rule 23(e)(2)(A) ..........................................................................................6
  Rule 23(e)(2)(B) ..........................................................................................8
  Rule 23(e)(2)(C)(i) ....................................................................................10
  Rule 23(e)(2)(C)(iii) ..................................................................................16
  Rule 23(e)(2)(C)(ii) ...................................................................................16
  Rule 23(e)(2)(C)(iv) ..................................................................................17
  Rule 23(e)(2)(D) ........................................................................................17
  Rule 23(e)(3) ...................................................................................6, 17

**SECONDARY AUTHORITIES**

Cornerstone Research, *Securities Class Action Settlements – 2021 Review and
  Analysis* (2022) ........................................................................................14

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation:
  2021 Full-Year Review* (Jan. 25, 2022) ....................................................14

Lead Plaintiffs Wayne County Employees' Retirement System, the Town of Fairfield Employees' Retirement Plan, and the Town of Fairfield Police and Firemen's Retirement Plan ("Lead Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for: (1) final approval of the proposed class action settlement (the "Settlement") in the above-captioned action (the "Action"), which provides a thirty-three million dollar ($33,000,000.00) cash recovery for the Settlement Class as set forth in the Stipulation of Settlement dated March 25, 2022 (ECF 159-1) (the "Stipulation");[1] (2) certification of the Settlement Class;[2] and (3) approval of the Plan of Allocation.

## I.    INTRODUCTION

Lead Plaintiffs and Lead Counsel, Robbins Geller Rudman & Dowd LLP ("RGRD") and Pomerantz LLP ("Pomerantz"), successfully achieved the Settlement, thereby securing for the Settlement Class a gross cash recovery of $33 million to resolve this securities fraud class action lawsuit against Defendants Fluor Corporation, David T. Seaton, Biggs C. Porter, Bruce A. Stanski, Matthew McSorley, Gary G. Smalley, Carlos M. Hernandez, D. Michael Steuert, and Robin K. Chopra ("Defendants").  The Settlement is the product of extensive work by Lead Counsel, which included, *inter alia*, investigating the claims; preparing the consolidated and amended complaints; successfully consolidating a tag-along action that sought to splinter the claims; litigating two motions to dismiss; preparing a detailed motion for reconsideration regarding the dismissed claims; and positioning the case for discovery concerning the upheld claims.  Following this Court's order partially denying Defendants' second motion to dismiss, Lead Counsel engaged in intensive and

---

[1]    Unless otherwise noted here, all capitalized terms have the same meaning as set forth in the Stipulation, all internal citations are omitted, and all emphasis is added.

[2]    The Settlement Class preliminarily certified by the Court for purposes of this Settlement is comprised of "all persons or entities that purchased, or otherwise acquired, the common stock of Fluor (NYSE: FLR) during the Settlement Class Period" between August 14, 2013 and February 14, 2020, both dates inclusive, subject to certain exclusions set forth in Stipulation, ¶¶1.32-1.34.

extensive arm's length mediation overseen by an experienced mediator, Gregory Lindstrom of Phillips ADR Enterprises.  After preparing and exchanging written mediation papers, a full-day mediation, and months thereafter of mediator-assisted negotiations, the Parties had exhaustively discussed the strengths and weaknesses of their respective positions before an agreement in principle to settle was reached on February 23, 2022.

Having evaluated the facts and applicable law, and recognizing the serious risks and expense of continued litigation, Lead Plaintiffs, sophisticated investors with hundreds of millions of dollars of assets under management and experience in securities fraud litigation, and Lead Counsel, who have substantial experience in litigating and trying securities class actions and are recognized as leading experts in the field, submit that the proposed Settlement should be approved as it is fair, adequate and reasonable and is not the product of collusion between the parties.  Before entering into the Settlement, Lead Plaintiffs and Lead Counsel understood the strengths and weaknesses of the claims and defenses and engaged in significant efforts to protect the Settlement Class's interests. *See generally* Joint Declaration of Darryl J. Alvarado and Matthew L. Tuccillo in Support of: (I) Final Approval of Settlement and Approval of Plan of Allocation, and (II) an Award of Attorneys' Fees and Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Declaration" or "Joint Decl."), App. 001 – App. 016, submitted herewith.  Lead Plaintiffs and Lead Counsel understood the serious risks of continued litigation, and while strongly believing in the merits of their case, recognized that Defendants did as well.  Beyond heightened risks from application of both Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Securities Exchange Act of 1934 ("Exchange Act"), Lead Plaintiffs bore the burden of proving each element of their claims and faced damages and fraud-on-the-market / reliance defenses at summary judgment and trial, both entailing an expensive and risky battle of

experts.  Either party could have prevailed after a lengthy, expensive trial.  Inevitable post-trial appeals would have increased the length, expense, and uncertainty of this proceeding.

As detailed below, the Settlement is an excellent result, providing immediate financial recovery and eliminating substantial risks associated with further litigation, particularly after 63 of the 64 alleged misstatements were dismissed, leaving an uncertain path to recovery should litigation of the surviving misstatement continue.  The Settlement's merit is further demonstrated by the fact that, to date, there have been ***no objections*** and only ***four exclusion requests*** – two of which are deficient.  *See* Declaration of Luiggy Segura Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; (C) Report on Exclusion Requests and Objections; and (D) Claims Received to Date ("Segura Decl."), App. 021, ¶12, submitted herewith.

The proposed Settlement Class meets all requirements of Fed. R. Civ. P. 23, such that the Court should grant certification for purposes of the Settlement, including appointing Lead Counsel, who diligently prosecuted this complex class action, as Class Counsel.

Lead Counsel developed the Plan of Allocation in conjunction with Lead Plaintiffs' damages expert, and it is designed to fairly and equitably distribute the Net Settlement Fund to Settlement Class Members.  Joint Decl., App. 013 – App. 014, ¶39.  After notice, there have likewise been ***no objections*** to it.  Lead Plaintiffs therefore respectfully request that the Court also approve the Plan of Allocation.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

The accompanying Joint Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*, the Action's factual allegations and procedural history (App. 010 – App. 013, ¶¶20-35); the nature of the claims (App. 007 – App. 010, ¶¶14-19); the drafting and defending of the complaints (App. 010 – App. 011, ¶¶22-27); the risks of continued litigation (App. 005, App. 013, ¶¶10, 36);

and the extensive mediation efforts and protracted arm's-length negotiations leading to the Settlement (App. 004, App. 012, ¶¶7, 30-32).

## III.   PRELIMINARY APPROVAL WAS GRANTED AND NOTICE WAS SENT

On May 26, 2022, the Court entered an Order (ECF 162) (the "Preliminary Approval Order") preliminarily approving the Settlement.  As directed by the Court, copies of the short-form postcard Notice were sent to over 404,700 potential Settlement Class Members and their nominees.  *See* Segura Decl., App. 020, ¶8.  To date, there have been *zero objections* to any aspect of the Settlement and only *four exclusion requests* (only two of which were deemed valid), while Settlement Class Members have filed over 44,000 claims.  *Id.*, App. 021 – App. 022, ¶¶12-15.

## IV.   THE SETTLEMENT SHOULD BE FINALLY APPROVED

The Settlement provides for the payment of $33 million in cash by or on behalf of all Defendants for the benefit of the Settlement Class, which Lead Plaintiffs and Lead Counsel respectfully submit is a good result under the circumstances and clearly within the range of reasonableness, thus warranting final approval.  Those funds have been deposited into an escrow account and are currently earning interest on behalf of the Settlement Class.

### A.   The Public Interest Favors Settlement of Complex, Class Actions

For well over a century, courts across the country have pronounced a preference for settlement compromises of disputed claims.  *See, e.g.*, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  The Fifth Circuit is no different, long proclaiming that settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977); *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975).

Settlements of class actions and shareholder litigation are "particularly favored" and are not to be lightly rejected.  *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Cotton v.*

*Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). The Fifth Circuit has recognized that class actions have a "well deserved reputation as being most complex," which compels an "overriding public interest in favor of settlement." *Cotton*, 559 F.2d at 1331. Thus, in determining whether to approve a settlement, the trial judge may adopt the parties' and their counsel's assessment of the merits of the case, rather than making an independent decision of the merits. *Maher*, 714 F.2d at 455. The experience and acumen of Lead Counsel lends further weight to this proposition.

When examined under applicable criteria, the Settlement is a good result for the Settlement Class, particularly since it avoids the risk, uncertainty, delay, and expense of a trial. Lead Counsel believe there is a significant risk that there would not have been a more favorable result for the Settlement Class after trial and the likely post-trial motions and appeals. The Settlement achieves a certain and substantial recovery for Settlement Class Members now and avoids the risk that there would be no recovery at all if the Action continued years into the future.

## B. The Standards Governing Approval of Class Action Settlements Are Satisfied

In evaluating final approval, courts must determine if a class action settlement is "'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004). The factors to be considered are:

> (2) ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

- 5 -

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

        (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Fifth Circuit has adopted six factors, some of which overlap with the Rule 23(e)(2) factors, to be evaluated in determining whether to approve class action settlements:

(1)    the existence of fraud or collusion behind the settlement;

(2)    the complexity, expense, and likely duration of the litigation;

(3)    the stage of the proceedings and the amount of discovery completed;

(4)    the probability of plaintiff's success on the merits;

(5)    the range of possible recovery; and

(6)    the opinions of class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986) (considering these factors in affirming approval of class action consent decree).

The Settlement satisfies each factor established by Rule 23(e)(2) and the Fifth Circuit.

## 1.    Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Lead Plaintiffs and Lead Counsel adequately represented the Settlement Class during both the litigation and its settlement, thereby satisfying Rule 23(e)(2)(A). Lead Plaintiffs' interests in obtaining a fair, reasonable, and adequate settlement are consistent with those of the Settlement Class Members. They have typical and coextensive claims, including that they purchased Fluor common stock when the price was allegedly inflated and incurred legal damages as a result of the same stock price declines that allegedly injured absent Settlement Class Members. Lead Plaintiffs

have a shared interest in obtaining the largest possible recovery in this Action by proving that the alleged statements were materially false or misleading, were made with scienter, and caused damages to Settlement Class Members, themselves included.   Under the proposed Plain of Allocation, Lead Plaintiffs will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class.  *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *24 (N.D. Tex. Nov. 8, 2005). Further, Lead Plaintiffs have maintained an active role in this litigation, including by seeking appointment as Lead Plaintiffs, reviewing drafts of pleadings and key motions, overseeing Lead Counsel at key strategic junctures of the litigation, carefully monitoring and authorizing steps taken at the mediation and thereafter, considering and approving the Settlement, and otherwise regularly communicating with counsel regarding the status of and developments in this case.  *See* Declaration of Gerard Grysko on Behalf of Wayne County Employees' Retirement System ("Wayne County Decl."), App. 333, ¶4; Declaration of Brenda L. Kupchick and Carolyn Trabuco on Behalf of the Town of Fairfield Employees' Retirement Plan and the Town of Fairfield Police and Firemen's Retirement Plan ("Fairfield Funds Decl."), App. 339, ¶9.  Lead Plaintiffs were kept apprised before, during, and after the mediation and the extended post-mediation negotiation of this Settlement, discussing and providing settlement authority, closely monitoring developments, and ultimately concluding that it was fair and appropriate after due consideration.  *Id.*  This level of involvement in the prosecution and settlement of the claims highlights their adequacy as lead plaintiffs.  *See, e.g.*, *Buettgen v. Harless*, 2011 WL 1938130, at *5 (N.D. Tex. May 19, 2011) (finding adequacy where movant "has been kept informed of the progress of this lawsuit, [and] has moved this Court to appoint it lead plaintiff").  Thus, Lead Plaintiffs are adequate representatives of the Settlement Class.

Lead Plaintiffs are represented by highly qualified counsel with decades of experience in securities class action litigation.  Both RGRD and Pomerantz are preeminent securities class action litigation firms whose attorneys routinely litigate in this Circuit.  *See* Declaration of Darryl J.

Alvarado Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), App. 073 – App. 231, Ex. C (Firm Resume); Declaration of Matthew L. Tuccillo, Esq. Filed on Behalf of Pomerantz LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Pomerantz Decl."), App. 243 – App. 299, Ex. C (Firm Resume).  Among other things, Lead Counsel conducted a thorough investigation of the claims; retained a private investigator and consulted confidential witnesses; reviewed press releases, disclosures, SEC filings, and other public statements; evaluated analyst reports; studied and analyzed Fluor's stock price movements; engaged experts on issues such as damages and loss causation; drafted consolidated and amended complaints; litigated two motions to dismiss and successfully defended certain claims in the First Amended Consolidated Complaint ("FAC") (ECF 90); prepared a detailed motion for reconsideration regarding the dismissed misstatements while positioning the case for discovery concerning the upheld claim; prepared detailed opening and reply mediation statements; engaged in a full-day mediation session overseen by an experienced mediator, which included arm's-length discussions of the strengths and weaknesses of the case; participated in further mediator-assisted settlement discussions after the conclusion of the mediation; conducted extensive negotiations regarding the terms of the proposed Settlement; and conferred with Lead Plaintiffs throughout the foregoing efforts to litigate and resolve the Action.  *See generally* Joint Declaration.

Accordingly, as the Court previously found in conditionally certifying the Settlement Class and appointing Lead Plaintiffs as Class Representatives and RGRD and Pomerantz as Lead Class Counsel, *see* ECF 162 at ¶¶4-5, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class in accordance with Fed. R. Civ. P. 23(a)(4).

## 2. The Arm's Length Settlement Lacks Any Fraud or Collusion

There is no fraud or collusion in the Settlement, satisfying Rule 23(e)(2)(B) and the first *Reed* factor.  The Parties reached this Settlement only after a lengthy process, with regular status

updates to the Court, that involved formal mediation and several months of negotiations through an experienced mediator, Gregory Lindstrom of Phillips ADR Enterprises. Courts recognize that the "'presence of a neutral mediator'" is a factor "'weighing in favor of a finding of non-collusiveness.'" *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018).

The Settlement does not provide preferential treatment to Lead Plaintiffs or any other specific Settlement Class Member. The proposed Plan of Allocation, set forth in the publicly-available Notice posted on the website dedicated to the Settlement, to which Settlement Class Members were directed, was developed by Lead Counsel in consultation with their damages expert and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Proofs of Claim. Stipulation, Ex. B1 at 13-23. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims and the timing of purchases and sales of Fluor common stock, with greater weight given to those purchases that occurred between the upheld misstatement and corrective stock declines and lesser weight given to purchases at other times during the Settlement Class Period. *Id.* Similar plans have been approved by Fifth Circuit courts. *See, e.g.*, *Schwartz*, 2005 WL 3148350, at *24 (finding lead counsel's proposed plan of allocation appropriate where it ensured class members' recovery would arise from both their legal damages and actual losses, recognizing the facts and circumstances and based on an objective analysis of the magnitude of loss given the timing of purchases and sales).

Lead Counsel have decades of experience litigating securities class actions and have negotiated scores of other class settlements which have been approved by courts nationwide. Lead Counsel have hard-earned reputations for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters. *See* RGRD Decl., App. 073 – App. 231, Ex. C (Firm Resume); Pomerantz Decl., App. 243 – App. 299, Ex. C (Firm Resume). Likewise, Defendants were at all times represented by attorneys at Gibson Dunn & Crutcher LLP

with reputations for the tenacious defense of class actions and other complex matters.  "Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best of the class and the court is not to substitute its own judgment for that of counsel."  *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017).  The Settlement Class was fairly and adequately represented, and the Settlement was not collusive, facts which support final approval.

### 3.    The Stage of Litigation and Amount of Discovery Support Approval

Under the third *Reed* factor, courts consider the stage of the proceedings and the amount of discovery.  Under this factor, the inquiry is whether the plaintiff has obtained sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement.  *Cotton*, 559 F.2d at 1332.  "Formal discovery is not a prerequisite to settlement" and "[u]nless Lead Counsel settled while 'groping in darkness' the lack of formal discovery will not hinder the settlement."  *Schwartz*, 2005 WL 3148350, at *19; *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming approval of securities class action settlement absent formal discovery, where the District Court noted that "class counsel had conducted informal discovery by hiring private investigators and experts" and that "the parties [were] 'well informed about the merits of their respective positions'").

Here, through their extensive efforts, and after two Orders by this Court regarding the sufficiency of the pleadings, Lead Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case and sufficient information to make informed decisions regarding the Settlement's fairness.  *See* §IV.B.1., *supra*; Joint Decl., App. 005 – App. 006, ¶¶10-11.  Therefore, this *Reed* factor weighs in favor of approval.

### 4.    The Settlement Relief Is Sufficient

Rule 23(e)(2)(C)(i) asks whether the Settlement relief is adequate, taking into account the costs, risks, and delay of trial and appeal.  The second and fourth *Reed* factors similarly look at the

complexity, expense, and likely duration of the litigation, and the probability of success on the merits. *Reed*, 703 F.2d at 172.  The proposed Settlement satisfies these factors as well.

### a.      Liability, Damages, and Class Certification Risks

As in every complex case, Lead Plaintiffs and Lead Counsel faced formidable obstacles to recovery at class certification, summary judgment, and trial.  The claims arise under Exchange Act §§10(b) and 20(a), and Defendants dispute liability and damages.  Although Lead Plaintiffs and Lead Counsel believe that the FAC's allegations would ultimately be supported by the evidence, they recognize that they faced significant hurdles to proving liability at trial.  After two motions to dismiss, the Court upheld the pleadings as to only 1 of 64 alleged misrepresentations.  There is no guarantee the Fifth Circuit would reverse dismissal of any of the rest, and indeed, it could instead order full dismissal on appeal.  Defendants argued that they made no actionably false or misleading misstatement and that they did not possess the requisite scienter required for an Exchange Act claim. Defendants asserted formidable defenses to the remaining misstatement, which they would have pursued through discovery to trial, including, *inter alia*, that the upheld statement was actually true and believed by Defendants to be true when made, that they were not the statement's "makers," that it had no price impact when made, and that it was never corrected and thus could not have caused any loss.  Defendants would have retained highly qualified experts to testify about pertinent complex issues, *e.g.*, the lack of price impact or the risks of fixed-price projects more broadly.

Thus, even if Lead Plaintiffs established liability at trial, they faced substantial risks in proving loss causation and damages, which would have involved an inherently unpredictable, costly, and hotly disputed "battle of the experts."  Accordingly, in the absence of the Settlement, there was a very real risk that the Settlement Class would have recovered an amount significantly less than the Settlement Amount – or even nothing at all.  Thus, the payment now of $33 million, when viewed in

- 11 -

the context of the significant risks and uncertainties involved in proving liability, damages, and loss causation, weighs strongly in favor of approving the Settlement.

Defendants also assuredly would have contested class certification, which requires substantial briefing and extensive and costly expert discovery, including depositions, on the issue of market efficiency. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263-68 (2014) (defendants may rebut presumption of reliance at the class certification stage by showing the alleged misrepresentations had no impact on stock price). Moreover, even if the Court granted Lead Plaintiffs' future class certification motion, Defendants would likely have sought an interlocutory appeal or moved to decertify the class prior to trial. *See, e.g.*, Fed. R. Civ. P. 23(c)(1)(C); *McNamara v. Felderhof*, 410 F.3d 277, 280 n.8 (5th Cir. 2005) (noting a district court can reconsider or modify its class certification order).

In sum, Lead Plaintiffs and Lead Counsel were clear-eyed in recognizing that, had the case proceeded to trial, it may have been difficult to recover much or even any of the damages claimed. Therefore, Lead Plaintiffs and their counsel believe that the Settlement for $33 million in cash represents an excellent result for the Settlement Class under the circumstances.

### b.     The Action's Complexity, Expense, and Likely Duration

Another reason for counsel to recommend, and courts to approve, a proposed settlement is the complexity, expense, and likely duration of further litigation (second *Reed* factor). "It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. The Fifth Circuit has recognized that securities class actions are among the riskiest litigations from the plaintiffs' perspective, explaining that "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Here, several factors are present which make it more likely that, without

- 12 -

the Settlement, this case would have required additional large expenditures of time and money with a significant risk that the Settlement Class would obtain a result far less beneficial than the one provided by the Settlement. The factors include:

- Lead Plaintiffs faced months, if not years, of grueling discovery, where many of the principal actors are no longer at Fluor, thus complicating collection of their documentary and testimonial evidence. Discovery would have included extensive witness depositions and review of numerous documents, followed by extensive expert discovery, motions for summary judgment, trial, and appeals. All these efforts would be time consuming and resource intensive.

- A trial would require months of effort and substantial expenditures, involving hundreds of exhibits and testimony by dozens of fact witnesses on complicated matters regarding the Brunswick project, vigorously contested evidentiary motions, and conflicting expert testimony. The trial outcome was by no means certain.

- Even if a trial resulted in a larger judgment years from today, given the time value of money, it might be less beneficial than receiving the Settlement now. Moreover, a trial judgment would be subject to appeals, where even large judgments can be lost.

Given the significant risks and the fact that the Court dismissed much of Lead Plaintiffs' case, the result achieved for the Settlement Class is exceptional. The present value of a certain recovery at this time, as opposed to the highly uncertain chance for a greater (but speculative) one much later down the road, supports eliminating the risk of continued litigation and approving the Settlement. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("'[s]ecurities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case'").

**5.      The Range of Possible Recovery Supports Approval**

The fifth *Reed* factor requires the court to consider the range of possible recovery by the Settlement Class. The focus of this factor is whether the settlement falls within the range of reasonableness, given the likelihood of the plaintiffs' success on the merits. *See Halliburton*, 2018 WL 1942227, at *5. In making this assessment, "courts will compare the settlement amount to the relief the class could expect to recover at trial, *i.e.*, the strength of the plaintiff's case." *Id.*

However, the Court should not "try the case via the fairness hearing because 'the very purpose of the compromise is to avoid the delay and expense of such a trial.'" *Id.* (quoting *Reed*, 703 F.2d at 172). "[F]inal approval is frequently given to settlements even when 'the settlement amount is a very small fraction of the damages amount projected by the Plaintiffs.'" *Id.*

Here, the $33 million Settlement must be assessed in two lights.  Had the Court upheld the entirety of the FAC's alleged fraud, spanning its full multi-year Class Period, and assuming all alleged curative disclosures were fully intact, then class-wide damages could near $3.99 billion, a pie-in-the-sky scenario against which the $33 million Settlement Amount represents under 1% recovery of maximum damages.  More realistically, however, the Settlement's value must be viewed in the context of the case that remained following the Court's Rule 12(b)(6) Order, which involved just one alleged misstatement on March 5, 2015 that was corrected by February 18, 2016.  In this drastically narrowed period, class-wide damages were estimated to be roughly $88 million.  Under these circumstances, the $33 million Settlement Amount is an excellent result representing nearly ***37.5%*** of recoverable class-wide damages.  Thus, the Settlement is well within the range of reasonableness, particularly given the risks through trial.  *See* Cornerstone Research, *Securities Class Action Settlements – 2021 Review and Analysis* (2022), at 6 (median settlement in Exchange Act cases with damages exceeding $1 billion was 2.3% from 2012 – 2020 and 4.2% in 2021, while median settlement in such cases with damages of $74 - $149 million was roughly 4.9% from 2012 – 2020 and 7.4% in 2021); NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (Jan. 25, 2022) at 20 (median settlement value for securities class action settlements below $1 billion was $8 million in 2021).

Given the case's limited scope after the Court's ruling on the second motion to dismiss, the low chances for Lead Plaintiffs' efforts to obtain reconsideration or interlocutory appeal of the Court's motion to dismiss Order, Defendants' strong arguments on loss causation and other required

- 14 -

elements, and the possibility that continued litigation may have resulted in the further winnowing of the case and an even lower recovery or no recovery at all, the $33 million Settlement achieved by Lead Plaintiffs and Lead Counsel represents a good result for the Settlement Class.  This factor supports final approval.

### 6. Opinions of Lead Counsel, Lead Plaintiffs, and Settlement Class Members Support Approval

The sixth *Reed* factor weighs in favor of final approval of the Settlement.  A strong initial presumption that a settlement is fair and reasonable is created where, as here, experienced counsel negotiated it at arm's length, with the assistance of a mediator.  *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed*, 703 F.2d at 175.  If experienced counsel determine that a settlement is in the class's best interest, "the attorney's views must be accorded great weight."  *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

Here, Lead Counsel possess substantial experience litigating securities class actions and acquired a full understanding of this Action through their independent investigation, extensive pre-settlement litigation, and the extended mediation and negotiation process, and submit that the Settlement is appropriate and should be approved.  The view of Lead Counsel should be given substantial weight in determining whether to approve the Settlement.  *Marcus*, 2017 WL 6590976, at *3.  In addition, Lead Plaintiffs have been actively involved in the litigation, oversaw Lead Counsel's work during the mediation and settlement negotiation process, and carefully considered and approved the Settlement.  *See* Wayne County Decl., App. 333, ¶¶4-5; Fairfield Funds Decl., App. 338 – App. 339, ¶¶7-8.

Finally, the Court should consider the reaction of the Settlement Class.  The deadline to submit objections and requests for exclusion is the date of this filing.  To date, although Fluor had

hundreds of millions of shares outstanding during the FAC's Class Period, **no objections** and only **four exclusion requests** have been received, against 44,075 Proofs of Claim thus far submitted by potential Settlement Class Members.  Segura Decl., App. 021 – App. 022, App. 054- App. 062, ¶¶12-15 & Ex. D.  This reaction weighs strongly in favor of final approval.  *See Halliburton*, 2018 WL 1942227, at *5 ("'Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement.'").

### 7.     The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### a.     The Proposed Distribution Method Is Effective

The settlement administration here includes well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund in accordance with Fed. R. Civ. P. 23(e)(2)(C)(ii).  JND Legal Administration, the Court-approved Claims Administrator, will process claims under Lead Counsel's guidance, will allow claimants a chance to cure any deficiencies in their claims or to seek Court review of a denial of their claims, and will mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation) if and when the Court grants both final approval and Lead Plaintiffs' future distribution motion.[3]  These claims processing methods are standard in securities class action settlements and have long been found to be effective and necessary, as neither Lead Plaintiffs nor Defendants have the individual investor trading data needed for a claims-free process. *See, e.g.*, *In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6649018, at *1 (W.D. Tex. Dec. 6, 2019).

#### b.     The Requested Attorneys' Fees Are Reasonable

Rule 23(e)(2)(C)(iii) addresses the proposed award of attorneys' fees.  As discussed more fully in the accompanying Unopposed Motion for an Award of Attorneys' Fees and Expenses, and

---

[3]     Per Stipulation, ¶6.8, this is not a claims-made settlement, so once the Settlement is Final, Defendants will have no right to the return of any portion thereof based on the number or value of the claims submitted.

Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) and Memorandum in Support Thereof ("Fee Memorandum"), Lead Counsel are applying for a percentage of the common fund fee award to compensate them for the services they rendered, on a fully contingent basis since mid-2018, on behalf of the Settlement Class.  The proposed attorneys' fees of 30% of the Settlement Fund are reasonable given the substantial work performed, the litigation risks, and the results obtained.  Also reasonable is Lead Counsel's request for payment of $115,915.09 in costs, charges and expenses incurred in prosecuting the Action to this point.  These requests are in line with other settlements approved in the Fifth Circuit in similar securities class actions.[4]  *See, e.g.*, *Parmelee v. Santander Consumer USA Holdings Inc.*, 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (awarding 33 1/3% of the settlement fund as attorneys' fees and granting payment of expenses); *see also* Fee Memorandum at §III.C.

### c.      There Is Only a Standard Supplemental Agreement

In accordance with Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3), and as Lead Plaintiffs noted in their preliminary approval papers, the Parties entered into a confidential Supplemental Agreement providing that if the total opt outs from the Settlement Class exceed an agreed-upon threshold, Defendants shall have the option (but not the obligation) to terminate the Settlement.  Stipulation, ¶2.13.  This type of agreement is standard in securities class action settlements and has no negative impact on the Settlement's fairness.  *See Halliburton*, 2018 WL 1942227, at *5 (approving settlement with similar confidential agreement).  Moreover, the threshold has not been met.

### d.      Settlement Class Members Are Treated Equitably

Fed. R. Civ. P. 23(e)(2)(D) looks at whether Settlement Class Members are treated equitably. The Plan of Allocation (Stipulation, Ex. B1 at 13-23) treats Settlement Class Members equitably

---

[4]     Moreover, as is customary, approval of the requested attorneys' fees is separate from Settlement approval, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation, ¶2.11.

relative to each other, based on the timing of their Fluor common stock purchases or acquisitions and their sales.  All damaged shares purchased or acquired during the portion of the Settlement Class Period that the Court upheld are treated identically and as a group benefit from greater weighting reflecting the fact that the correlating claim survived a motion to dismiss and was in discovery.  All damaged shares purchased or acquired during the parts of the Settlement Class Period before or after the upheld claim are treated identically and as a group receive lesser weighting reflecting the more challenging posture flowing from the Court's two dismissals and the reality that the correlating claim would need to be revived via a motion for reconsideration or on appeal.  Authorized Claimants can have damaged shares in one or both categories.  Within each category, an Authorized Claimant's claim will be calculated individually and then subject to a *pro rata* adjustment.  After each Authorized Claimant's *pro rata* figures from both categories are finalized and totaled together, and once the Court grants a future distribution motion, a single payment will be made to each Authorized Claimant from the Net Settlement Fund.  *Schwartz*, 2005 WL 3148350, at *24 (finding Lead Counsel's proposed plan of allocation appropriate where it ensured class members' recovery would arise from both their legal damages and actual losses, recognizing the facts and circumstances and based on an objective analysis of the magnitude of loss given the timing of purchases and sales); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2008 WL 4178151, at *4-*5 (S.D. Tex. Sept. 8, 2008) (approving plan of allocation that, *inter alia*, limited distribution of settlement proceeds to a category of claimants that lead counsel determined to have weaker claims because it was negotiated at arm's length and produced a fair, adequate and reasonable plan for distribution taking into consideration such things as "interclass distinctions based on the relative strength and weaknesses of the different claims, the timing of purchases and sales, the magnitude of the loss").

### C.      The Settlement Should Receive Final Approval

Each approval factor identified under Rule 23(e)(2) and by the Fifth Circuit is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the $33 million Settlement recovery is an outstanding one that could not have been achieved without full commitment by Lead Plaintiffs and Lead Counsel, who respectfully submit that the Settlement is fair and adequate and meets all relevant factors, such that it should be finally approved.

## V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The Court's Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  ECF 162 at ¶¶3-5.  Certification of the Settlement Class remains proper and should be granted now.

### A.      The Settlement Class Satisfies Fed. R. Civ. P. 23(a)

"'The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies.'"  *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979).  Indeed, "[t]hrough the procedural mechanism of a class settlement, defendants 'are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e).'"  *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014).  As detailed below, the requirements of Rules 23(a) and 23(b)(3) are satisfied, such that the Settlement Class may be certified for settlement purposes.

#### 1.      The Settlement Class Is Sufficiently Numerous

The Fifth Circuit has held that "the prerequisite expressed in Rule 23(a)(1) is generally assumed to have been met in class action suits involving nationally traded securities." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981).  Evidence of numerosity in a securities case can consist of "the number of shares traded" during the relevant period.  *Id.*  Here, over 404,700

Postcard Notices were mailed to potential Settlement Class Members, and thus far, 44,075 Proofs of Claim have been submitted by potential Settlement Class Members. Segura Decl., App. 020, App. 022, ¶¶8, 15. Joinder would clearly be impracticable. *See* ECF 162 at ¶4; *Billiteri v. Sec. Am. Inc.*, 2011 WL 3586217, at *4 (N.D. Tex. Aug. 4, 2011).

### 2.      There Are Common Questions of Law or Fact

"To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *Deepwater Horizon*, 739 F.3d at 810. The common questions here include whether the Exchange Act was violated by Defendants' acts as alleged in the FAC, to what extent the Settlement Class Members have sustained damages, and the proper measure of damages. The "legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct." *Id.* Commonality is thus satisfied. *See* ECF 162 at ¶4.

### 3.      Lead Plaintiffs' Claims Are Typical

Typicality under Rule 23(a)(3) requires that the class representatives' claims "'have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). As with commonality, "'the test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Id.* "'Typicality does not require a complete identity of claims.'" *Id.*; *accord Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999). Here, the same facts establishing commonality establish typicality. Lead Plaintiffs, like the other Settlement Class Members, purchased Fluor stock in the same manner and pursuant to the same alleged fraud during the same Class Period. Lead Plaintiffs are not subject

- 20 -

to any unique defenses that could make them atypical.  Thus, typicality is established.  ECF 162 at ¶4; *Billiteri*, 2011 WL 3586217, at *5.

### 4. Lead Plaintiffs Fairly and Adequately Protected Class Interests

Rule 23(a)(4)'s adequacy prong requires that "the representative parties will fairly and adequately protect the interests of the class."  To determine adequacy, courts in the Fifth Circuit utilize a three-prong test, wherein proposed class representatives must show that:  (1) there are no conflicts of interest between them and the proposed class; (2) they have the willingness and ability to play an active role in the litigation and vigorously represent the class, while protecting the interests of absentee class members; and (3) class counsel has the competence and ability to vigorously conduct the litigation.  *Buettgen*, 2011 WL 1938130, at *5.  The crux of the inquiry is whether proposed class representatives are "'part of the class and possess the same interest and suffer the same injury as the class members'" or have any interests that are antagonistic to the rest of the class.  *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977)).  The test is easily satisfied here.  *See* §IV.B.1, *supra*.  Lead Plaintiffs lack any conflicts of interest with the Settlement Class and have demonstrated a willingness and ability to play an active role in the litigation and to vigorously represent the Settlement Class, while protecting the interests of its absentee members, during the past 4+ years of litigation.  Wayne County Decl., App. 332 – App. 333, ¶¶3-5; Fairfield Funds Decl., App. 338 – App. 339, ¶¶7-9.  Moreover, Lead Plaintiffs retained attorneys who are qualified, experienced, and able to (and did) vigorously conduct the litigation.  *Buettgen*, 2011 WL 1938130, at *5.  Lead Counsel have extensive experience litigating complex securities fraud class actions on behalf of injured investors throughout the country.  RGRD Decl., App. 073 – App. 231, Ex. C (Firm Resume); Pomerantz Decl., App. 243 – App. 299, Ex. C (Firm Resume).  Thus, the adequacy of representation prerequisite is met.  ECF 162 at ¶4; §IV.B.1, *supra*.

**B.**     **The Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3)**

**1.**     **Common Questions of Law or Fact Predominate**

The Supreme Court has recognized that predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  Predominance is based "on the numerous common issues of liability." *Deepwater Horizon*, 739 F.3d at 815.  The common issues of law and fact here predominate over individual questions because Defendants' conduct impacted all Settlement Class Members in the same way and the core elements of the claim – falsity, materiality, scienter, reliance, loss causation, and damages – all present issues susceptible to common proof.  *See* ECF 162 at ¶4; *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016).

**2.**     **A Class Action Is Superior for Adjudicating the Controversy**

Superiority is also satisfied.  "Class actions are considered superior when individual actions would be wasteful, duplicative, present managerial difficulty and be adverse to judicial economy." *Buettgen*, 2011 WL 1938130, at *8.  There are hundreds of thousands of investors in the Settlement Class.  As such, a class action is a superior method of adjudicating this matter.  ECF 162 at ¶4.

**C.**     **Rule 23 Is Fully Satisfied, So the Settlement Class Should Be Certified**

For the reasons stated here and in Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF 158), Lead Plaintiffs respectfully request that the Court affirm its determination in the Preliminary Approval Order (ECF 162) certifying the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3).

**VI.     CLASS NOTICE SATISFIED DUE PROCESS**

Lead Counsel caused the Settlement Class to receive adequate notice of the Settlement.  The Claims Administrator sent 404,749 copies of the Court-approved postcard Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort, from multiple sources.  Segura Decl., App. 018 – App. 020, ¶¶2-8.  The postcard Notice directed

- 22 -

Settlement Class Members to the Claims Administrator's website devoted to the Settlement, where the Stipulation, long-form Notice (which included the Plan of Allocation), and Proof of Claim, along with the Court-approved deadlines, were posted. *Id.*, App. 020 – App. 021, ¶11. The Claims administrator also sent letters to Nominee Account Holders and Institutional Groups contained on a master mailing list of 4,079 banks and brokerage companies. *Id.*, App. 019, ¶4. The Summary Notice was published once over *PR Newswire* on June 23, 2022. *Id.*, App. 020, ¶9. This notice, previously approved by the Court, was appropriate and cost effectively directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

The Notice program provided the necessary information for Settlement Class Members to make an informed decision. Among other things, the long-form Notice disclosed: (1) the Settlement Amount; (2) the reasons for settlement; (3) that Lead Counsel would apply for an award of attorneys' fees not to exceed 30% of the Settlement Fund, litigation expenses not to exceed $200,000.00, and awards to Lead Plaintiffs not to exceed $75,000.00 total and $25,000.00 each; (4) the name, phone number, and address of Lead Counsel's representatives for inquiries; (5) the right of Settlement Class Members to object to the Settlement or to seek exclusion from the Settlement Class, and the consequences of their actions or inaction concerning those rights; and (6) the dates and deadlines for certain Settlement-related events. *See* Segura Decl., App. 027 – App. 046, Ex. B (long-form Notice); *see also* 15 U.S.C. §78u-4(a)(7). It further explained that the Net Settlement Fund would be arrived at "after payment of Court-approved attorneys' fees and expenses, the costs of claims administration, including the costs of printing and mailing the Notice and the costs of publishing notice, any compensatory awards to Lead Plaintiffs, and Taxes and Tax Expenses," and thereafter distributed to Authorized Claimants. *Id.*, App. 032, Ex. B (long-form Notice at 6).

The Notice program was sufficient because it apprised Settlement Class Members of their rights with respect to the Settlement, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Fed. R. Civ. P. 23, the PSLRA, and due process. *See, e.g.*, *In re Forterra Inc. Sec. Litig.*, 2020 WL 4727071, at *2 (N.D. Tex. Aug. 12, 2020) (approving similar notice program combination of postcard notice, summary notice, and detailed notice available online as "the best notice practicable").

## VII.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

In the Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation. ECF 162 at ¶9.  Lead Plaintiffs now request that the Court give final approval of the Plan of Allocation for purpose of administering the Settlement.  The Plan of Allocation was prepared with the assistance of Lead Plaintiffs' damages expert and is based, in part, on an estimation as to the amount of artificial inflation in the prices of Fluor common stock during the Settlement Class Period. Joint Decl., App. 013 – App. 014, ¶39.  No preferential treatment will be provided to Lead Plaintiffs or other Settlement Class Members.  Once Notice and Administration Costs, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses, and any award to the Lead Plaintiffs pursuant to the PSLRA have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed on a *pro rata* basis based on an analysis estimating the amount of artificial inflation in the prices of Fluor common stock at various times during the Settlement Class Period and the timing of a Settlement Class Member's transactions in Fluor common stock.  The Plan of Allocation affords greater weight to damaged shares purchased during the portion of the Settlement Class Period upheld by the Court's motion to dismiss Orders and lesser weight (but not zero weight) to damaged shares purchased during the rest of the Settlement Class Period before and after the upheld segment.  Perhaps most importantly, it was described in the Notice, and, even after the mailing of 404,749 postcard Notices and posting of the Long-Form Notice to the Settlement website,

- 24 -

no one has objected to it.  Segura Decl., App. 018 – App. 020, App. 037 – App. 043, ¶¶2-8, Ex. B (Long-Form Notice), at 11-17.

Similar plans have been approved by courts in this District.  *See, e.g.*, *Schwartz*, 2005 WL 3148350, at *24 (approving plan of allocation where it ensured class members' recovery would arise from both their legal damages and actual losses, recognizing the facts and circumstances and based on an objective analysis of the magnitude of loss given the timing of purchases and sales and finding "[m]ost importantly, there [was] only . . . one objection to the Plan of Allocation").

## VIII.   CONCLUSION

The litigation's complexity, substantial expense, and high risks weigh heavily in favor of accepting the $33 million Settlement, which presents a sizable, immediate, and certain benefit to Settlement Class Members.  Accordingly, Lead Plaintiffs respectfully request that this Court approve the Settlement, Notices, and Plan of Allocation as fair, reasonable and adequate; permanently enjoin the assertion of any of the Settlement's released claims; dismiss the Action with prejudice as to the Defendants; certify the Settlement Class for settlement purposes; and enter Final Judgment in the form previously submitted as Stipulation Exhibit E (ECF 159-7).[5]

DATED:  October 17, 2022                    Respectfully submitted,

                                            KENDALL LAW GROUP, PLLC
                                            JOE KENDALL (Texas Bar No. 11260700)


                                            */s/ Joe Kendall*
                                            JOE KENDALL

                                            3811 Turtle Creek Blvd., Suite 1450
                                            Dallas, TX  75219
                                            Telephone: 214/744-3000
                                            214/744-3015 (fax)
                                            jkendall@kendalllawgroup.com

---

[5]   A proposed Order will be submitted with Lead Counsel's reply submission on October 31, 2022.

Local Counsel for Wayne County Employees'
Retirement System

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (CA Bar No. 144892)
DARRYL J. ALVARADO (CA Bar No. 253213)
J. MARCO JANOSKI GRAY (CA Bar No. 306547)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
mjanoski@rgrdlaw.com

DATED:  October 17, 2022        POMERANTZ LLP
JEREMY A. LIEBERMAN (NY Bar No. 4161352)
MATTHEW L. TUCCILLO (NY Bar No. 5008750)
J. ALEXANDER HOOD II (NY Bar No. 5030838)
JENNIFER BANNER SOBERS (NY Bar No. 4411922)


*/s/ Matthew L. Tuccillo*
MATTHEW L. TUCCILLO

600 Third Avenue, 20th Floor
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mltuccillo@pomlaw.com
ahood@pomlaw.com
jsobers@pomlaw.com

Lead Counsel for Lead Plaintiffs

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD (MI Bar No. P46787)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Wayne County Employees'
Retirement System

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE (Texas Bar No. 24001788)
3131 McKinney Avenue, Suite 600
Dallas, TX  75204
Telephone:  214/643-6011
281/254-7789 (fax)
wbriscoe@thebriscoelawfirm.com

Local Counsel for the Town of Fairfield Employees'
Retirement Plan and the Town of Fairfield Police and
Firemen's Retirement Plan

## CERTIFICATE OF CONFERENCE

Counsel for Lead Plaintiffs conferred via email with counsel for Defendants on October 17, 2022.  Counsel for Defendants indicated that they do not oppose the relief requested for settlement purposes only.


_____
*/s/ Darryl J. Alvarado*
DARRYL J. ALVARADO

## CERTIFICATE OF SERVICE

This is to certify that on October 17, 2022, I have filed the above and foregoing on the Court's CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be served electronically with true and exact copies of this filing.



*/s/ Joe Kendall*
JOE KENDALL